### STATE ex rel. ATTORNEY GENERAL v. DAVENPORT et al.

No. 18081.   Opinion Filed May 10, 1927.

(Syllabus.)

1. **Courts—Prohibition — Supreme Court's Jurisdiction to Issue Writ Against Other State Courts.**

By virtue of section 2, article 7, Williams' Annotated Constitution of Oklahoma, the

Supreme Court is given original jurisdiction to issue writs of prohibition to any and all courts created by either the Constitution or by statute, prohibiting and restraining such court or courts from undertaking to exercise a jurisdiction not granted it or them, or rendering a judgment in excess of their power.

**2. Courts—Criminal Court of Appeals—Creation and Jurisdiction.**

Section 2, article 7, Williams' Annotated Constitution of Oklahoma, grants permissive authority to the Legislature to create a Criminal Court of Appeals. Such court, if and when created, is one of special and limited jurisdiction. The authority granted the Legislature to confer jurisdiction upon said court is only appellate in criminal cases.

**3. Appeal and Error—No Right of Appeal from Supreme Court to Criminal Court of Appeals.**

There is no provision in the Constitution or laws of the state of Oklahoma which authorizes or permits an appeal from the Supreme Court of the state to the Criminal Court of Appeals, and, therefore, no right of appeal exists.

**4. Courts—Jurisdiction of Criminal Court of Appeals to Issue Extraordinary Writs.**

Section 2, article 7, Williams' Annotated Constitution, does not give such special court, therein referred to as the Criminal Court of Appeals, any jurisdiction to issue extraordinary writs, such as habeas corpus, quo warranto, prohibition, etc., and it therefore possesses no such jurisdiction, unless it be by implication in aid of its appellate jurisdiction in criminal cases.

**5. Same—Lack of Jurisdiction to Disturb Judgments of Supreme Court.**

The Criminal Court of Appeals is not given by the Constitution or statutes any power, authority, or jurisdiction to affirm, reverse, review, vacate, modify, suspend, or otherwise alter, on any kind of proceedings, the final judgment and decree of the Supreme Court of the state.

**6. Contempt—Jurisdiction of Supreme Court to Punish for Contempt.**

The Supreme Court of Oklahoma has inherent jurisdiction, as well as statutory jurisdiction, to issue citations, and punish for contempt.

**7. Courts—Criminal Court of Appeals—Jurisdiction—Legislative Control—Issuance of Extraordinary Writs.**

The jurisdiction of the Criminal Court of Appeals, given it by statute within the permissive sanction of the Constitution of the state, exists and can be exercised solely by virtue of statutory authority, and if the statute purports to give the said Criminal Court of Appeals power to issue any extraordinary writ as herein referred to, the Legislature has the right to regulate the issuance thereof, and the power and authority of the court when acting thereon. All such authority or jurisdiction being itself statutory, its limitations can be prescribed by the legislative authority of the state.

**8. Habeas Corpus—Validity of Statute Forbidding Inquiry into Judgment of Contempt.**

Section 432, C. O. S. 1921, is not inconsistent with section 10, article 2, of the Constitution of Oklahoma, and is a constitutional enactment.

**9. Contempt—Criminal Court of Appeals Without Jurisdiction to Inquire Into Commitment for Contempt by Supreme Court.**

Section 432, C. O. S. 1921, provides:

"No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following. * * * Third. For any contempt of any court, officer or body having authority to commit."

This section precludes the Criminal Court of Appeals from inquiring into or discharging from custody a person held on a commitment for contempt by a court having jurisdiction to commit, and in the instant case, the Supreme Court having jurisdiction to commit for contempt, the said Criminal Court of Appeals is precluded by said section of the statute from exercising any jurisdiction to inquire into the commitment or to order the contemnor discharged.

**10. Habeas Corpus—Constitutional Right to Writ.**

Section 10, article 2, Williams' Annotated Constitution, which deals with the right or privilege of the writ of habeas corpus, preserved without extension the right to such writ in the form in which it existed at the time of the adoption of the Constitution, and to serve the purpose for which it could then be utilized under the statutes and the common law.

**11. Contempt—Contempt not "Crime" Within Appellate Jurisdiction of Criminal Court of Appeals.**

Conviction for contempt is not conviction for a crime, in the acceptation and meaning of said term, as used in section 2, article 7 of the Constitution, giving the Criminal Court of Appeals exclusive appellate jurisdiction in criminal cases.

**12. Judges — Waiver of Disqualification—Judgment by Disqualified Judge not Void.**

In this state a litigant's right to preclude from the trial of his case a disqualified judge or judges is a personal privilege, which can be waived by him, and not a right which

pub.ic policy will enforce as against his waiver. A judgment of a court pronounced by a judge who is disqualified is not void.

### 13. Habeas Corpus—Release from Custody Under Commitment for Contempt.

A contemnor will not be released from custody on a writ of habeas corpus in any case, and the said writ does not lie to review the judgment of commitment, unless the said judgment is void.

Application for a writ of prohibition by the State on the relation of the Attorney General against James S. Davenport and the Criminal Court of Appeals. Writ granted.

The Attorney General. for relator.

James S. Davenport, for respondents.

BRANSON, C. J. This matter is before this court on application of the relator for a writ of prohibition against James S. Davenport, as one of the Judges of the Criminal Court of Appeals of the state of Oklahoma, against the Criminal Court of Appeals, and the other members thereof.

Preliminary to a discussion of the law, a brief statement of the history out of which this matter arises should be made.

On the 7th day of January, 1927, this court, on complaint filed by the relator, issued a citation to the respondent, O. O. Owens. A brief summary of the complaint is incorporated in the judgment and sentence as an appendix to this opinion. The citation directed that he show cause why he should not be adjudged by this court guilty of contempt. and punished therefor. The cause came on for hearing April 23, 1927. The proceedings on the hearing are disclosed by the said judgment made a part hereof, post. Within a few minutes thereafter, the respondent Owens presented to Hon. Jas. S. Davenport, one of the members of the Criminal Court of Appeals, an application for a writ of habeas corpus, which was by the said Jas. S. Davenport denied, but, in lieu thereof, the said Jas. S. Davenport made and entered what was termed a rule to show cause why a writ of habeas corpus should not be issued and the petitioner therein, O. O. Owens, discharged from custody; and ordered his release, as is shown by the record of the said Criminal Court of Appeals, in cause A-6581. on bond, which bond was approved by the said Davenport. Said order to show cause was made returnable by the said judge to the said Criminal Court of Appeals. and thereby placed the relator upon notice of the intended presentation and hearing by the said Criminal Court of Appeals of the said application to discharge the said O. O. Owens. This court immediately and on the said 23rd day of April, 1927, issued an alternative writ of prohibition against the said Jas. S. Davenport, and against the said Criminal Court of Appeals, to show cause on Monday, the 25th day of April, why he and the said Criminal Court of Appeals should not have issued against them an absolute writ of prohibition, prohibiting the said court and the members thereof from affirming. vacating, modifying, suspending, or in any wise altering the final judgment and decree of this court which adjudged the said O. O. Owens in contempt of this court; and, upon the return, entered an absolute prohibition, which is made an appendix to this opinion, and marked "Exhibit B". That thereafter an amended and supplemental application for a writ of habeas corpus was filed in the said Criminal Court of Appeals, in the said cause A-6581, setting up alleged and pretended grounds on which the petitioner, Owens, prayed a release and discharge from custody from the sheriff of Oklahoma county.

We take it that argumentative discussion. and a citation of authorities are unnecessary to establish that a writ of prohibition cannot be issued, except to prevent threatened action by a court in excess of its authority and jurisdiction, or to prevent the abuse of authority or the use of excessive judicial force..

We feel impelled to set out why the application for the writ of prohibition was and should have been granted, and the writ issued in this case. There are so many reasons why the said court had no jurisdiction to grant his prayer that we deem it only necessary to discuss a few of them.

It is not every court or tribunal having judicial or quasi judicial authority that has authority to grant or discharge a person in custody on a writ of habeas corpus. The power of the court to take such action must be found in the Constitution or the statutes of the sovereign. In this connection the question arises as to whether or not the Criminal Court of Appeals of Oklahoma has power. on the habeas corpus, to discharge a person held in custody on process from this or any other court having power to commit. The process and judgment of this court was before the Criminal Court of Appeals in the form of a return filed by the sheriff of Oklahoma county, setting forth a certified copy thereof, filed in the records of the said court in the said cause A-6581.

We will examine this from the standpoint of the constitutional authority of said court.

Article 7, Williams' Oklahoma Constitution. section 1. provides:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court. district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

It will be noted from this section that the Legislature is given authority to create by law ,(as distinguished from constitutional provisions) courts and tribunals inferior to the Supreme Court. Section 2 of the said article provides:

"The appellate jurisdiction of the Supreme court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a **Criminal Court of Appeals** with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus. mandamus, quo warranto, certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same; and the **Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law.** Each of the Justices shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and make such writs returnable before himself, or before the Supreme Court, or before .any district court, or judge thereof, in the state."

From the first part of the first sentence thereof it appears that the appellate jurisdiction of the Supreme Court extends to all cases, at law and in equity. "and to all criminal cases, **until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law."** It thus appears that the permissive authority granted the Legislature to create a Criminal Court of Appeals makes such court a special court with a special jurisdiction, and that jurisdiction is fixed as being "exclusive appellate jurisdiction in criminal cases." Particular attention must be directed to that part which provides that the jurisdiction of that court is **appellate jurisdiction,** and that the **appellate jurisdiction** is in criminal cases. There is not to be found in any other section of the Constitution authority to create the Criminal Court of Appeals.

The second sentence in said section gives the Supreme Court original jurisdiction to superintend and control all inferior courts, etc.

The third sentence in said section expressly authorizes the Supreme Court to issue writs of habeas corpus, mandamus, etc. The latter part of said third sentence ends, "and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law." There is no such provision as last quoted contained in the Constitution as to the special court designated as the Criminal Court of Appeals, for the said section, while specifically giving the right to the Supreme Court to exercise jurisdiction not therein specified, but which might be conferred upon it by law. nowhere provides that the Criminal Court of Appeals may exercise any authority that the Legislature of the state might see fit to give it, except appellate jurisdiction in criminal cases. It is clear that the jurisdiction which the Legislature was permitted to give such Criminal Court of Appeals is made specific and definite, and it goes to the exclusion of the power of the Legislature to give the said court any other or additional jurisdiction, unless it might be said (and this we do not pass upon) that it might be given power to issue so-called "extraordinary" writs, where same became necessary in the exercise of the jurisdiction expressly authorized to be given it by the Legislature. But this could only be by implication. It must be noticed that in permitting such court only jurisdiction appellate in criminal cases there appears no word or sentence which indicates, except to negative, that the said special court should have any original jurisdiction in any matter, or any original jurisdiction to issue any writ such as here. The maxim of the law, expressio unius est exclusio alterius, with all the discussions to be found thereon, is brought to bear to make clear that the jurisdiction of the said special court is only appellate, and that only in criminal cases. The same section of the Constitution recognized that original jurisdiction should be conferred on the Supreme Court, and sets out what that is, and in setting out the original jurisdiction of the Supreme Court, by the strongest intendment, precluded original jurisdiction to be granted to the Criminal Court of Appeals. Certainly none can be implied to said court that might conflict with such expressly given the Supreme Court. That same section expressly authorizes the Supreme Court to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs as may be provided by law. The said section further says that the Supreme Court "may exercise such other and further jurisdiction as may be conferred up-

on it by law." (This means by an act of the Legislature—ours.)

Further on, the said section provides that each Justice shall have power to issue writs of habeas corpus to any part of the state, and to make such writs returnable before himself or the Supreme Court, or before any district judge of the state. We must hold that when the Legislature elected to create the Criminal Court of Appeals, only appellate jurisdiction in criminal cases could be given it. This is further made clear by analogy with the provisions creating the district courts and the authority of the judges of said courts, for section 10 of said article 7 provides, among other things: "The district courts or any judge thereof shall have power to issue writs of habeas corpus, mandamus, injunction," etc. So we find that in the Constitution of this state certain courts are specifically authorized to issue extraordinary or remedial writs.

It must be borne in mind that the Criminal Court of Appeals was created by statute, and is not a constitutional court. However, it is not such a court as referred to in section 1 of said article 7, wherein such other courts, commissions, or boards inferior to the Supreme Court might be established by law.

This court recognizes that under said section 1, article 7. the Legislature might create courts inferior to the Supreme Court and give such courts power to issue writs of habeas corpus and other extraordinary and remedial writs, but the Criminal Court of Appeals is not such a court as is referred to in the said section 1, but section 2 makes it a special court with a **special and a limited jurisdiction.** That jurisdiction is by the Constitution itself fixed as purely appellate in criminal cases. Could it be said that the Legislature, under this constitutional provision, could give to the Criminal Court of Appeals appellate jurisdiction in civil cases? Certainly not! But the Legislature could with as much reason give the said Criminal Court of Appeals appellate jurisdiction in civil matters as it could to give it original jurisdiction to issue writs of habeas corpus which might destroy the jurisdiction given thereof to the Supreme Court, for the Constitution does not expressly say that it shall not be given appellate jurisdiction in civil cases, but does say that its jurisdiction shall be appellate in criminal cases.

The threatened exercise of pretended jurisdiction by the Criminal Court of Appeals is upon an original action filed in said court. The said petition seeks at the hands of that court that a final judgment and decree in contempt, entered by the Supreme Court of the state, be vacated, set aside, and held for naught. Such jurisdiction has never been permitted to be given by authority of the Constitution of the state to the Criminal Court of Appeals, and its attempt to exercise the same is in excess of its power, and a writ of prohibition by this court, expressly authorized to grant such writs against any of the courts in the state undertaking to exercise jurisdiction it does not possess, is within its right, its power, and its duty.

At this stage of our discussion we deem it pertinent, at the expense of repetition, to call attention to the appendix, to wit, the judgment of contempt, and to point out that there is no judgment against the said Owens save and except as contained therein. Did this court have jurisdiction to enter such a judgment? No citation is deemed necessary to answer this interrogatory save and except an opinion written by the Criminal Court of Appeals itself. for that court said (Smith et al. v. State, 12 Okla. Cr. 516, 159 Pac. 943).

"And in Nichols v. State, 8 Okla. Cr. 550, 129 Pac. 673, this court passed squarely upon the second contention urged under this assignment, and held that the contention is without merit. **To hold that a court must look to an inferior tribunal to enforce its orders and decrees would be ridiculous.** As is stated in Nichols v. State, supra:

" 'The power to fine and imprison for contempt is a necessary attribute of a court. It is a power inherent in all courts of record, and co-existing with them by the wise provisions of the common law. A court without the power to enforce its orders, judgments, or decrees would be a disgrace to the laws which created it. Such a condition could but result in the degradation of courts, and to make them truly subjects of contempt.'

"No court could exist, or, if existing would be a curse rather than a blessing, if stripped of the power to enforce its orders, judgments, and decrees. Hence it is the universal rule that even courts of chancery and other courts which have no criminal jurisdiction can punish for so-called criminal contempt, because the power to do so is inherent and necessary to the efficiency and very existence of the court. And as stated in Rapalje on Contempt, par. 13:

" 'It is a well-settled rule that that court alone in which a contempt is committed, or whose order or authority is defied, has power to punish it, or to entertain proceedings to that end. * * * The highest court of a state will not punish a contempt offered to the processes or authority of an inferior tribunal.'

"And with much less reason could it be urged that the highest court of original jurisdiction in the state must look to an inferior tribunal to enforce its orders and decrees."

See, also. the case of Williamson, 26 Pa. 9; and cases therein cited.

In this connection we must present the want of jurisdiction of said court to inquire into or render any judgment, as prayed by the petitioner in said Criminal Court of Appeals. Section 432, C. O. S. 1921, provides:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following:

"First. Upon process issued by any court or judge of the United States, or where such court or judge has 'exclusive jurisdiction; or,

"Second. Upon any process issued on any final judgment of a court of competent jurisdiction; or,

"Third. For any contempt of any court, officer or body having authority to commit."

But it may be said that said statute is violative of the constitutional provision of this state (section 10, article 2):

"The privilege of the writ of habeas corpus shall never be suspended by the authorities of this state."

Should it be conceded that our conclusion that the Criminal Court of Appeals has no jurisdiction to issue any extraordinary writ, such as is sought by the petitioner, save and except in aid of its appellate jurisdiction in criminal cases, is erroneous, we would then be led into the inquiry as to whether or not it could, under said statute, pass on the allegations and grant the prayer of the petitioner Owens. The said statute is part of the Code of Oklahoma. It might properly be referred to as the Habeas Corpus Act. It came into the territory of Oklahoma by adoption from the state of Kansas. The Constitution of the state of Kansas (section 8 of the Bill of Rights) provides:

"The right to the writ of habeas corpus shall not be suspended unless the public safety requires it in cases of invasion and rebellion."

In purpose, intendment, and effect it is the same as section 10 of article 2 of the Constitution of Oklahoma. Many times this section has been before the Supreme Court of the state of Kansas, and never has it been held to be violative of the said constitutional provision of said state. We deem it necessary only to refer to some of such cases: In re Morris (Kan.) 18 Pac. 171; In re Yunn (Kan.) 32 Pac. 470; In re Black (Kan.)

34 Pac. 414; Ex parte Hanson (Kan.) 105 Pac. 694. But we need not go to the Kansas authorities, for the able Supreme Court of Oklahoma Territory in the case of In re Frank McMaster, 2 Okla. 435, 37 Pac. 598, in the syllabus, makes clear the law as to the said statute. It is:

"Section 699, chapter 66, page 881, general section 4578 of the Laws of Oklahoma, 1893, provides: 'No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following. * * * Third: For any contempt of any court, officer or body having authority to commit: * * *' Held: A judge of the Supreme Court may not release a petitioner who is held in custody under a commitment issued upon a judgment holding him guilty of contempt of the district court."

But again, it may be said that while said statute precludes any court or judge to inquire into the legality of any judgment or process whereby the party is in custody, or discharge him for any contempt of any court, officer or body "having authority to commit," the "authority to commit", in the instant case, was wanting. Certainly it cannot be urged that the Supreme Court of this state, as an instrumentality of government, has no authority to commit for contempt. We pass that, for no court would have the temerity to assert such. But the petitioner might assert that its want of authority in the instant case was due to an alleged fact that the judges constituting the court were disqualified. In this connection this court knows that the motion to disqualify was overruled, and further knows that the respondent, when before this court, offered no evidence to substantiate any statement in his motion. and, should it be conceded (which, of course, it is not) that his allegations were true, we find the rule laid down in 33 C. J. 1022, that while the judicial act of a disqualified judge is an error or irregularity, the same is, at common law, merely voidable and not void, and does not affect his jurisdiction, and his judgment is not subject to a collateral attack. If the act of the judge alleged to be disqualified is a personal privilege, the respondent or litigant could waive the same, and the act of the judge or judges is not void. There is nothing in the Constitution or statutes of this state which makes the judges (nine in number) of the Supreme Court of this state disqualified; or prohibits them from acting on any allegation set forth in the motion to disqualify.

In Jones v. Williamsburg City Fire Ins.

Co. (Kan.) 116 Pac. 484, the Supreme Court of the state of Kansas had before it a case where a litigant had asked a change of venue on account of the disqualification of the presiding judge, and his request had been denied. The Supreme Court, in passing on the question, in syllabus No. 2, said:

"The disqualification of the district judge to sit in the trial of a cause is not equivalent to want of jurisdiction, and does not deprive him of all power to act, except to change the venue."

Relief by habeas corpus is never granted except from judgments which are void. In this state it has been held by this court, and also by the Criminal Court of Appeals, that a litigant's right to preclude from trial of his case a disqualified judge is a personal privilege which he can waive. and not a right which public policy will enforce against his waiver. This was held in Ex parte Hudson, 3 Okla. Cr. 393, 106 Pac. 540; and Holloway v. Hall et al., 79 Ok a. 163, 192 Pac. 219. In the last named case it was held by this court, in an opinion written by Justice Rainey, that the judgment of a court presided over by a disqualified judge is not void. Thus this court held, under the general rule announced in 33 C. J. 1022, supra, that the judgment rendered by a disqualified judge was never void in those states where it is held that the right of a litigant to preclude such judge is a personal privilege which he could waive. as distinguished from a constitutional right which public policy will enforce even against his waiver. The courts hold as herein stated, because if it is a right a litigant can waive, then it is not jurisdictional.

If our judgment for contempt in this case is therefore not void. habeas corpus will not lie to review it, or to vacate it under any condition. We have correctly held in this case that none of the Justices of this court participating in this case are disqualified, and this we again affirm. Certainly, by no degree of sound logical reasoning can it be said from the record here that a majority of the Justices were disqualified. Even though it could be said that in addition to a qualified majority of the members of this court there participated in the determination of the case other Justices who should have been held disqualified, the jurisdiction of the court did not fail, and the judgment was not void. This we hold to be the rule and law in this state. See State of North Dakota ex rel. v. Kositzky. 38 N. D. 616, 166 N. W. 534. L. R. A. 1918D. 237. and extensive annotations there appearing.

But suppose for a moment that this court be mistaken in the interpretation of the facts and of the law, as to whether certain of its Justices are disqualified to sit in this case in determining the validity of its judgment, or whether same be voidable or void, there is no authority of law in the Constitution or in the statutes for the Criminal Court of Appeals to overrule our judgment. Final authority in the matter here involved must be vested in some tribunal, or else there would never be an end to litigation, and annoyance and confusion would ensue. Aside from the power of the federal courts to review for federal questions, the framers of our organic law saw fit to place such final authority in this court, and not in the Criminal Court of Appeals. and we now ask the question, Why should it have been otherwise?

As we have construed, and now construe, section 432, C. O. S. 1921, this court could not inquire by a writ of habeas corpus into the legality of the judgment of the Criminal Court of Appeals, committing a person for contempt of said court. Although we hold that contempt is not a crime, it is not necessary at this time to pass upon the question of whether, in the exercise of its unlimited appellate jurisdiction in civil matters, this court could by certiorari review such judgment of the Criminal Court of Appeals, but whatever situation may arise, this court is empowered to issue all such writs as may be necessary to enforce its judgments. and to protect the officers who execute the same.

In Bailey on Habeas Corpus, vol. 2, page 1385, it is said:

"If the court has jurisdiction of contempts, and the matter is alleged as in contempt of that court, and jurisdiction of the person is obtained. then the court possesses all the elements of jurisdiction to authorize it to proceed and determine all other questions in the case, including the sufficiency of the complaint or charges, and the question of law relevant thereto."

And again:

"A simple question of law was thus presented to the court, as to whether all the elements constituting the offense of contempt appeared on the application for the commitment. Whether they did or not in no sense constitutes a jurisdictional question. The court concededly had jurisdiction of the parties and the subject-matter of the application, and we think authority to determine whether a contempt had been committed. * * * An erroneous decision of that question in no sense affected the jurisdiction of the court over the subject-matter of the application. The disobedience of its order by the

plaintiff gave the court jurisdiction of the subject-matter and called upon it to determine whether a contempt had been committed or not. The right to adjudicate upon this question did not depend upon the fact whether the plaintiff was guilty of a contempt, but whether a case had been made calling for an adjudication upon that question." iCting Fischer v. Langbein, 103 N. Y. 84, 8 N. E. 251; Marks v. Townsend, 97 N. Y. 590, and other cases.

Even if we concede, which we do not, that the power to issue the writ of habeas corpus, as granted by the Constitution, is an unlimited power to inquire into all commitments and detentions, our conclusion in this case must remain the same. The Constitution does not grant the Criminal Court of Appeals the power to issue such writ. The Legislature created the Criminal Court of Appeals, and if it has any power at all to issue a writ of habeas corpus, it is due to legislative enactment. Even if we should concede, which we do not, that the Legislature had the power to confer on such special court (the Criminal Court of Appeals) the right to inquire without limitation. through such writ, into all commitments and detentions, it must be conceded as not subject to any logical question that the Legislature at the same time had the right to limit such power, and this it did. The Legislature enacted section 432, C. O. S. 1921, referred to hereinabove, and re-enacted the same in the Code of 1910, known as Revised Laws of 1910, section 4893. It therefore must follow that the statute limiting the power of a court in habeas corpus proceedings is binding upon a court created by statute. even if it should be held that a court given power to issue the writ of habeas corpus by the Constitution could not by statute be limited in its exercise of such constitutional authority.

In the instant case we take it as unanswerable, if all our other holdings should be debatable, that if the Criminal Court of Appeals can issue a writ of habeas corpus at all, it is by virtue of legislative enactment, and the strong arm of the Legislature has stricken down the power of such a statutory court to issue such writ, and on the same inquire into, vacate, or review a judgment of a court having power to commit for contempt.

At this point it is not amiss to state that this court takes judicial knowledge of its records and decisions. The respondent herein, O. O. Owens (the petitioner for relief in the Criminal Court of Appeals), was charged, as shown by the judgment (appendix hereto), with contempt, growing out of the filing. of a contemptuous pleading in this court. His attorney, one H. B. Martin, was charged with contempt in cause No. 18080 on the docket of this court, which charge was based upon the same pleading. The regularly elected and constituted members of this court requested the Governor (under provision of the Constitution of the state authorizing same) to appoint members of the bar of the state to hear and determine that cause. They were appointed and held that the said pleading constituted a direct contempt of this court. In overruling the demurrer filed by the respondent Owens this court followed the law as therein announced. But, irrespective of the elements just heretofore discussed, which might be injected into the terminology "having authority to commit," this court holds that the said statute means that if the court itself which commits for contempt is vested with authority to commit, its judgment is valid and cannot be reviewed on application for a writ of habeas corpus.

The judgment as to the punishment inflicted is not in violation of the law.

Whether the Legislature should have been more definite in prescribing the punishment in cases of contempt is not before us for comment. Section 1698, Compiled Oklahoma Statutes, 1921, provides:

"Punishment for contempt shall be by fine or imprisonment, or both. at the discretion of the court."

There is no limitation as to the amount of the fine or the duration of the imprisonment. In the instant case this court, eight members thereof concurring, deliberately adjudged that for the aggravated contemptuous act of the respondent he deserved the sentence imposed. Should it be contended that the fine imposed was in excess of the statute, on the theory that is is a crime—a misdemeanor—and that the punishment could not exceed one year imprisonment and a fine of $500, we refuse to concur therein, but hold that contempt is not a crime within the ordinary acceptation of the term. Persuasive as to this distinction is section 2291, Compiled Oklahoma Statutes, 1921, which provides:

"A criminal act is not the less punishable as a crime because it is also declared to be punishable as a contempt."

This is one of the statutes of this state on crimes. We take it that a citation of authority is unnecessary that contempts of court, in their various forms. are sui generis.

While they partake of the nature of crimes, they are not such within the meaning of the statutes defining crimes and dividing them into classes. Unless there be a statute expressly declaring that a contempt is a misdemeanor, and punishable as such, it cannot be held to be a misdemeanor. There is no such statute in the state of Oklahoma. The punishment inflicted on the respondent did not exceed the authority of the court to inflict for the contempt charged and adjudged.

Adverting now to the constitutional provision as to the privilege of the writ of habeas corpus, supra, we desire to say that we are not unaware of the erroneous popular conception of the meaning of such provision. It did not give any new right, but merely preserved inviolate and free from suspension the privilege of the writ in all cases in which it existed at the time the Constitution of the state was adopted. It merely preserved the right which was recognized by the law, with the limitation of its exercise at that time existing by law. This court has never in its history failed to recognize the sacred rights of individual liberty preserved by this and other provisions. On occasions too numerous to undertake to tabulate it has been issued and the petitioner granted a discharge as prayed, but at no time has it ever been used by this court as a pretext to violate the solemn judgments and decrees of courts rendered within their jurisdiction and power under other provisions of law which exist and must be maintained as pari materia with the rights secured by this writ. For the sake of example, there is no constitutional provision held dearer to the American people than found in the Constitution, state and federal, as to the right of trial by jury. Section 19 of article 2 of the Constitution of Oklahoma provides:

"The right to trial by jury shall be and remain inviolate and a jury for the trial of civil and criminal cases in courts of record, other than county courts, shall consist of twelve men." etc.

It is pardonable that we particularly point out the phraseology "The right of trial by jury shall be and remain inviolate." This provision did not accord any new rights, but merely protected the right of trial by jury as it then existed and was known at common law. However great the property rights which might be involved in litigation, if the issues were of purely equitable cognizance, this constitutional provision did not give a right of trial by jury, for the right of trial in such cases was from antiquity in the English law and American jurisprudence recog-

nized as one to be heard by a chancellor, and this court, in the case of Mathews v. Sniggs, 75 Okla. 108, 182 Pac. 703, speaking through Mr. Justice Sharp, who has passed beyond the realm of controversial dispute, said, in commenting upon said constitutional provision:

"This right, declared to be inviolate by the Constitution, means only the right as it existed in the territory at the time of the adoption of the Constitution, as held in State ex rel. West v. Cobb, 24 Okla. 662, 104 Pac. 361."

And after citing numerous cases, said:

"As the right to trial by jury in equity cases was not recognized and did not exist at the time of the adoption of the state Constitution, plaintiffs' rights were not, on that account, denied."

The Criminal Court of Appeals, against which relief is here sought by writ of prohibition, in commenting upon the same constitutional provisions, which are thoroughly analogous to the habeas corpus provision, said (In re Simmons, 4 Okla. Cr. 662, 112 Pac. 951):

"As we construe these constitutional provisions the first means that a jury trial is preserved in all cases in which it existed at the time of the adoption of the state Constitution. It does not extend the right of trial by jury; it simply secures it in all cases in which it was a matter of right before. The second secures to the accused in all criminal prosecutions the right of trial by a jury of the county."

And this court said, in the case of Keter v. State, 82 Okla. 89, 198 Pac. 866, in an opinion by Justice Kennamer.

"The right to trial by jury declared inviolate by section 19, article 2, of the Constitution of Oklahoma, except as modified by the Constitution itself, has reference to the right as it existed in the territories at the time of the adoption of the Constitution, and the right to a jury trial therein referred to was not predicated upon the statutes existing in the territories at the time, but the right as guaranteed under the federal Constitution according to the course of the common law."

At the time the Oklahoma Constitution was adopted the territory was under the direct control of the federal Constitution and the organic act. The federal Constitution provides "The privilege of the writ of habeas corpus shall not be suspended," (art. 1, sec. 9). As early as 1893 the Legislature of the territory adopted from the state of Kansas the said section 432, Compiled Oklahoma Statutes, 1921, and that was upheld in the said case of In re McMaster above quoted,

and the Constitution of Oklahoma, as above pointed out, specifically gives the right to issue the writ to certain courts and certain courts only, and prohibits other courts and judges from inquiring into the judgment and process by which a person is committed for contempt as pointed out supra, where the court committing had no authority to commit.

The Supreme Court of the United States in the case of In re Burrus, 136 U. S. 610, quoted from the Circuit Court of Appeals:

" 'The privilege of the writ of habeas corpus shall not be suspended * * * 'does not purport to convey power or jurisdiction to the judiciary. It is in restraint of executive and legislative powers, and no further affects the judiciary than to impose on them the necessity. if the privilege of habeas corpus is suspended by any authority, to decide whether the exigency demanded by the Constitution exists to sanction the act."

In the instant case, the statute quoted, supra, prevents the Criminal Court of Appeals, or any judge thereof, inquiring into the judgment and commitment of this court, which judgment and commitment fixed the punishment of the respondent, and said Criminal Court of Appeals can have no jurisdiction unless it can hold that the said section is violative of the Constitution of this state. The said Criminal Court of Appeals has no authority to declare said section violative of the Constitution of Oklahoma. That power is vested in this court and this court alone, and as heretofore stated, this court holds that the said statute is not violative of the Constitution of Oklahoma. The said statute is one dealing with a civil matter. The power to declare the same violative of the Constitution of the state is not possessed by the Criminal Court of Appeals. The said court was created by the act of the Legislature immediately after statehood, known as the Legislature of 1907-8. In creating the said court, it interpreted the permissive power to be granted to said court by the Constitution. Its creation was by reason of House Bill 397, of the Session Acts of the first State Legislature. Section 2, thereof, provides:

"The Criminal Court of Appeals shall have exclusive appellate jurisdiction in all criminal cases appealed from county and district courts in this state. If in any cause appealed to the Criminal Court of Appeals, in which the construction of the Constitution of this state, or of the United States, or any act of Congress is brought in question, the said Criminal Court of Appeals shall certify to the Supreme Court of the state the question involving the construction of the Constitu-

tion of this state, or of the United States, or any act of Congress, for the final determination of the question so certified. Thereupon all further proceedings in said cause in the Criminal Court of Appeals shall await the decision of the Supreme Court upon such question. Upon the final decision of such question by the Supreme Court, said Supreme Court shall certify its decision on such question to the Criminal Court of Appeals, and said decision of such question by the Supreme Court shall govern said Criminal Court of Appeals. The Supreme Court shall give precedence to all questions certified to it by the Criminal Court of Appeals under this section."

The enrolled act of the Legislature containing said provision, of which this court takes judicial notice, is on file in the office of the Secretary of State. It was signed by Wm. H. Murray, as Speaker of the House of Representatives, Henry S. Johnston, President of the Senate, and C. N. Haskell, Governor. All three of those whose signatures are attached to said bill were members of the Constitutional Convention which drafted the present Constitution of this state, and in which is incorporated the permissive authority to create the said Criminal Court of Appeals.

Although this provision as to certifying constitutional questions to the Supreme Court is omitted from the Code, it was a legislative interpretation as to the restrictive jurisdiction intended by the Constitution to be given to such special court. That was the intention of the Constitution when drafted, and it is a rudimentary principle of law that neither a constitutional nor a statutory provision can have or be given a more extended meaning than it had at the time of its adoption. We must therefore conclude from the language of the Constitution itself, as interpreted immediately after its adoption by the Legislature of the state, that it had no power to declare a statute violative of the Constitution of Oklahoma. To hold that the Criminal Court of Appeals has any jurisdiction to review, vacate. modify, or override the final judgment of this court, committing the respondent for contempt of the Supreme Court of this state, would be to destroy the power of this court to function. We find no such authority in either the Constitution or the statutes of this state.

In this connection the duty of this court to prohibit any such threatened action is made clear by the disastrous results which would follow, as is aptly portrayed in a discussion of an analogous situation by the Su-

preme Court of Pennsylvania in the case of Williamson, 26 Pa. page 9, wherein that court said:

"A court must either have power to settle a given question finally and forever, so as to preclude any further inquiry upon it, or else it has no power to make any decision at all. To say that a court may determine a matter, and that another court may regard the same matter afterwards as open and undetermined, is an absurdity in terms. * * * It is most especially necessary that convictions for contempt in one court should be final, conclusive, and free from re-examination by other courts on habeas corpus. If the law were not so, our judicial system would break to pieces in a month. Courts totally unconnected with each other would be coming in constant collision. The inferior courts would revise all the decisions of the judges placed over and above them. A party unwilling to be tried in this court need only defy our authority, and, if we commit him, to take out his habeas corpus before an inferior judge of his own choosing, and, if that judge is of opinion that we ought not to try him, there is an end of the case. This doctrine is so plainly against the reason of the thing that it would be wonderful, indeed, if any authority for it could be found in the books. There is none, except the overruled decision of Mr. Justice Spencer of New York, already referred to, and some efforts of the same kind to control the other courts, made by Sir Edward Coke, in the king's bench, which are now universally admitted to have been illegal, as well as rude and intemperate. On the other hand, we have all the English judges and all our own, declaring their want of power to interfere with or control one another in this way. I will content myself by simply referring to some of the books in which it is established that the conviction of contempt in a separate proceeding, and is conclusive of every fact which might have been urged on the trial for contempt, and, among others, want of jurisdiction to try the cause in which the contempt was committed: (In re Yates) 4 Johns, 325 et seq.; the opinion of Chief Justice Kent on pages 370 to 375; 6 Johns. 503; 9 Johns. 423; People v. Nevins, 1 Hill, 170; State v. Woodfin, 27 N. C. 199; Ex parte Summers, Id. 153; In re Smethurst, 2 Sandf. 724; Lockwood v. State, 1 Ind. 160; State v. Tipton, 1 Blackf. 166; State v. Johnson, 25 Miss. 835; Com. v. Deacon, 2 Wheeler Cr. Cas. 1; 12 Adol. & El. 558. These cases will speak for themselves, but I may remark, as to the last one, that the very same objection was made there and here. The party was convicted of contempt in not obeying the decree. He claimed his discharge on habeas corpus because the chancellor had no jurisdiction to make the decree, being interested in the cause himself. But the court of

queen's bench held that, if that was a defense, it should have been made on the trial for contempt, and the conviction was conclusive. We cannot choose but hold the same rule here. Any other would be a violation of the law, which is established and sustained by all authority and all reason."

Without further discussion we are forced to the conclusion that the Criminal Court of Appeals of the state of Oklahoma is a special court, created for a special and limited purpose, to wit, to exercise final appellate jurisdiction in criminal cases; that there is no provision in the Constitution or statutes of the state by which an appeal in any matter may be taken from the Supreme Court of this state to the said special court; that the said special court is given by the Constitution no original jurisdiction to issue extraordinary writs of the kind here invoked by the respondent Owens; that the Constitution specifically confers original jurisdiction upon the Supreme Court to issue writs of habeas corpus, quo warranto, prohibition, and such other remedial writs as therein specified; that this court has the power and authority to issue a writ of prohibition to any court in this state created by the Constitution and laws of this state, prohibiting it from attempting to exercise a jurisdiction and authority not given it by the Constitution and laws of the state; that the Criminal Court of Appeals has no power, authority, or jurisdiction to review, affirm, reverse, vacate, modify, or override the final judgment of this the constitutional Supreme Court of Oklahoma; that this court has inherent jurisdiction as well as statutory jurisdiction to hear and punish for contempts; that there is no appeal therefrom, and no writ authorized to be issued to review the judgment of this court on contempt, save and except to a federal court where a federal question may be involved; that section 432, C. O. S. 1921, with its subdivisions, is a constitutional enactment and precludes said Criminal Court of Appeals, or any other court of this state, from inquiring, as herein sought, into the final judgment and decree of this court; that the provision of the Constitution of Oklahoma to the effect that the privilege of the writ of habeas corpus shall never be suspended, only preserved, without extension, the right to such writ in the form in which it then existed and was recognized by law, and to serve the purpose for which it could then be utilized under the statutes then existing; and further, that the authority vested in this court to punish for contempt is not authority to punish for a crime, for this court has no jurisdiction to commit a person

or to try a person charged with a crime. Being the court of last resort, and contempt being sui generis, the judgment of this court in the instant case is not subject to be suspended or modified by the Criminal Court of Appeals of the state of Oklahoma.

The writ of prohibition must, therefore, run to the Criminal Court of Appeals, prohibiting, restraining, and enjoining it and each of the Judges thereof from in any wise interfering with the enforcement of the judgment of this court heretofore entered in this cause.

MASON, V. C. J., and PHELPS, LESTER, CLARK, and RILEY, JJ., concur.

HARRISON and HEFNER, JJ., absent and not participating.

HUNT, J., having heretofore entered his disqualification in this case, did not participate.

---

### (Appendix A)

In the Supreme Court of the State of Oklahoma.

The State of Oklahoma ex rel. the Attorney General of the State of Oklahoma, Relator, v. O. O. Owens, Respondent.

No. 18081.

---

### Judgment and Sentence.

On January 3, 1927, O. O. Owens filed in the case of V. V. Harris, Receiver of the Riverside Oil & Refining Company, a Corporation, et al., Plaintiffs, versus T. G. Chambers et al., Defendants, No. 17409, a certain pleading, entitled: "Motion of the Defendants Riverside Oil & Refining Company, a Corporation, O. O. Owens and G. R. LeFever for Leave to File a Petition for Rehearing of said Cause, and to Stay the Mandate and Writ of Mandamus in said Cause."

On January 7, 1927, the state of Oklahoma, on the relation of the Attorney General of said state, filed in this court an information praying that a rule be issued, directed to the said O. O. Owens to appear before this court and show cause, if any he had, why he should not be adjudged guilty of contempt of this court for filing and publishing the said motion, and on January 7, 1927, this court issued its rule upon the said O. O. Owens, directing him to appear before this court on January 13, 1927, or on the fifth day after the adjournment of the Session of the Legislature of the State of Oklahoma, then and there to show cause, if any he had, why he should not be held in contempt of court, and punished accordingly.

On March 29, 1927, the said O. O. Owens appeared in open court, in response to the rule to show cause, and filed an application requesting certain members of the Supreme Court to certify their disqualification; also objections to the jurisdiction of the court; and also a demurrer. The cause was thereupon continued until the 23rd day of April, 1927, for the purpose of permitting briefs to be filed on the application requesting certain members of the court to certify their disqualification.

Now, on this the 23rd day of April, A. D., 1927, the above cause coming on for further hearing, the respondent appeared in person, and by his attorneys, H. B. Martin and A. F. Moss, and thereupon the application of the said O. O. Owens requesting certain members of the Supreme Court to certify their disdisqualification was, by the court, overruled. The objections of the respondent to the jurisdiction of the court, thereupon coming on for consideration, were by the court, overruled. Thereupon, the demurrer of the respondent coming on for consideration, the same was, by the court, overruled as to each and all of the grounds contained therein. Thereupon the respondent presented to the court affidavits concerning the absence of H. A. Ledbetter, one of the attorneys for the respondent, and orally requested a postponement of the cause. The court advised the respondent that he was represented by other counsel, to wit, A. F. Moss and H. B. Martin, and thereupon overruled the application for a postponement of the case.

The court thereupon asked the respondent whether he desired to be heard further as to why he should not be adjudged guilty of contempt of court under the second count of the information filed herein, and advised the respondent that he would not be required to plead or answer further to count No. 1 contained in said information at this time, or until further order of the court. Thereupon the respondent verbally entered a plea of "not guilty" and demanded a trial by jury. The demand for jury trial was, by the court, denied, the court holding that the matters charged in the second count of the information constituted a direct contempt of court.

Thereupon, the court inquired of the respondent if he desired to be heard further as to why he should not be adjudged in contempt of court and punished therefor, and the respondent thereupon stated that he did not care to present any testimony, or to be heard further.

The court, having given the respondent a full opportunity to be heard, and the court being well and sufficiently advised in the premises, finds that said O. O. Owens did, on January 3, 1927, file in cause No. 17409, a pleading designated "Motion of the Defendants, Riverside Oil and Refining Company, a Corporation, O. O. Owens and G. R. LeFever for Leave to File a Petition for Rehearing of said Cause, and to Stay Mandate and Writ of Mandamus in said Cause"; and the court further finds that said pleading contained numerous statements that are directly contemptuous of this court, scurrilous, false, and inserted for the purpose of reflecting not only on the members of this court, but on the court as such, and for the purpose of holding the court up to public opprobrium, and to incite public contempt for the court and certain Justices thereof, and for the purpose of influencing. intimidating, and coercing the Supreme Court of Oklahoma, and the Justices thereof, in the further determination and consideration of cause No. 17409, and such contemptuous allegations appearing in said pleading are as follows:

"These movants show that the reason no petition for rehearing was filed in this cause was and is that these movants are informed and believed that this cause was never considered by this honorable court and that the opinion handed down, as the opinion of this court, purporting to have been written by one of the honorable Justices of this court, Justice Charles W. Mason, was in fact written by one J. D. Lydick, who was one of the counsel for the plaintiffs in this cause, and that said opinion having been prepared and written by, as, aforesaid, Charles W. Mason, and handed down by him as the opinion of this court, without evidence in this cause and without any consideration of either the pleadings in this cause or the briefs filed therein. either by the said Justice Charles W. Mason, or any of the other Justices in this court."

"Movants say that they are informed and believe and, therefore, plead that the purported opinion of this court, filed as aforesaid, July 7, 1925, was prepared by the Honorable J. W. Clark, one of the Justices of this court, under the direction and control of the Honorable George M. Nicholson, who was at the time Chief Justice of this court, and that the said Nicholson was at the time under the control and direction of one J. B. Dudley, one of the counsel in said cause. That the aforesaid Justice Clark, in the preparation of the said opinion, did so prepare the same without knowledge of what was contained in the case-made in said cause, and without consideration of the briefs in said cause, but in preparing · said opinion the said Justice Clark was directed by the aforesaid Justice Nicholson to prepare an opinion affirming the judgment of the trial court, and movants say that they are informed and believe, and therefore plead, that the said purported opinion did not receive the concurrence of a majority of this court at any time before or at the time of its filing, and that the aforesaid opinion was prepared and filed and promulgated without the examination by the said Justice Clark, or any of the Justices purporting to concur in said opinion upon its face, of the record in said cause, either as to the evidence or the pleadings, and without consideration, examination or knowledge of the briefs in said cause and what they contained."

"And movants say that they are advised, and therefore plead, that the control, in the determination of this cause, of the Honorable J. W. Clark, one of the Justices of this honorable court, participating therein by the Honorable George M. Nicholson, another of the Justices of this honorable court participating therein, and the control of the Honorable George M. Nicholson in the premises by the said J. B. Dudley, one of the counsel in said cause, is, in law, and fact, a fraud against the rights of these movants."

The court finds that the above and forgoing constitutes a direct contempt of this court; and the respondent. having failed to show cause why he should not be adjudged guilty of contempt and punished therefor, it is, by the court, ordered and adjudged that O. O. Owens be, and he is hereby. adjudged guilty of direct contempt of this court under count 2 of the information filed therein, and it is further ordered and adjudged that for said contempt the said O. O. Owens shall be imprisoned in the county jail of Oklahoma county, state of Oklahoma, for and during a period of twelve (12) months, said time to commence upon the date of incarceration of the said O. O. Owens in the county jail of Oklahoma county, Okla., and to expire when the said O. O. Owens shall have served in said county jail the full time of twelve (12) months; and it is further adjudged that as a further punishment for such contempt, the said O. O. Owens shall pay a fine of five thousand dollars ($5,000) and the costs of this action, the same to be paid to the clerk of this court within ten (10) days from this date; and upon failure to pay said fine and costs within ten (10) days from this date, execution shall be issued and levied on the property of the said O. O. Owens.

It is further ordered that the said O. O. Owens be and he is hereby directed to stand committed to the county jail of Oklahoma county, Okla., and C. F. Worley, the bailiff of this court, is ordered to take immediate

charge of said O. O. Owens and to forthwith deliver the said O. O. Owens into the custody of the sheriff of Oklahoma county, Okla., together with a certified copy of this order and judgment, and the said sheriff of Oklahoma county, Okla., is commanded to receive the said O. O. Owens and to incarcerate and safely keep him in the county jail of Oklahoma county, Okla., for the full term of twelve (12) months from the date of said incarceration. and certified copy of this order and judgment shall be delivered to the sheriff of Oklahoma county, Okla., and shall constitute his warrant and authority for committing the said O. O. Owens to the county jail of Oklahoma county, and restraining him therein in accordance with the term of this judgment and sentence.

Done in open court, this the 23rd day of April, A. D. 1927.

Fred P. Branson,
Chief Justice, Supreme
Court of Oklahoma

Attest:

Jessie E. Moore,
Clerk, Supreme Court
of Oklahoma.

Seal

(Appendix B)

Filed in the Supreme Court of the State of Oklahoma April 25, 1927. Jessie E. Moore, Clerk.

In the Supreme Court of the State of Oklahoma.

State of Oklahoma ex rel. the Attorney General of the State of Oklahoma, Relator, v. O. O. Owens, Respondent.

No. 18081

Absolute Writ of Prohibition.

Whereas, on the 23rd day of April, A. D. 1927, O. O. Owens was committed to the county jail of Oklahoma county, state of Oklahoma, under a judgment and sentence of this court entered in this cause on said date; and

Whereas, the said O. O. Owens thereafter filed his application for writ of habeas corpus in the Criminal Court of Appeals of the state of Oklahoma, and on said 23rd day of April, 1927, James S. Davenport, one of the Judges of the Criminal Court of Appeals of the state of Oklahoma, entered an order directing the sheriff of Oklahoma county, Okla., to release the said O. O. Owens, upon the filing and approval of a bond; and

Whereas, thereafter, and on the same day, this court issued its alternative writ of pro-

hibition, directing the said James S. Davenport to appear before the Supreme Court of Oklahoma at 9:00 a. m., on the 25th day of April, 1927, then and there to show cause why he should not be prohibited from enforcing his said order directing the release of the said O. O. Owens upon bond, pending the hearing on the said writ of habeas corpus, and to show cause why he should not be prohibited from interfering with the enforcement of the judgment and sentence of this court, and restraining and prohibiting the said James S. Davenport from in any manner interfering with the judgment and sentence of this court, and from in any manner enforcing his order requiring the sheriff of Oklahoma county, Okla., to release the said O. O. Owens on bond, or to enforce in any manner any kind or character of order releasing the said O. O. Owens from the custody of the said sheriff; and directing the said sheriff of Oklahoma county to refrain from carrying out the order of the Criminal Court of Appeals or James S. Davenport, one of the Judges thereof, requiring the release of the said O. O. Owens from the custody of the said sheriff. and directing and commanding the said sheriff of Oklahoma county to enforce the judgment and sentence of the Supreme Court of Oklahoma in all particulars; and

Whereas, on this, the 25th day of April, 1927, the said James S. Davenport, one of the Judges of the Criminal Court of Appeals, appeared in open court and filed his response to the said alternative writ of prohibition heretofore issued herein; and after a consideration of such return, the court finds:

That the Criminal Court of Appeals of the state of Oklahoma, and the said James S. Davenport, as a member thereof, has no authority or jurisdiction to interfere in any manner with the enforcement of the judgment and sentence of this court in this cause, or to review, vacate, modify, affirm, or reverse a final order, judgment, and sentence of the Supreme Court of Oklahoma.

That the alternative writ of prohibition heretofore issued herein should be made absolute and permanent.

It is, therefore, the order, judgment and decree of the Supreme Court of Oklahoma that the said James S. Davenport, one of the Judges of the Criminal Court of Appeals of the state of Oklahoma, and the said Criminal Court of Appeals of the state of Oklahoma, be, and each of them are hereby absolutely and permanently prohibited, restrained, and enjoined from enforcing or at-

tempting to enforce the order of release heretofore issued out of the said Criminal Court of Appeals and directing the sheriff of Oklahoma county, Okla., to release the said O. O. Owens upon the filing and approval of a bond, and that the said alternative writ of prohibition heretofore issued herein be, and the same is hereby made permanent and absolute.

It is the further order, judgment, and decree of the Supreme Court of Oklahoma that the said James S. Davenport, as a Judge of the Criminal Court of Appeals of the state of Oklahoma, and the said Criminal Court of Appeals of the state of Oklahoma, be, and each of them are hereby absolutely and permanently prohibited, restrained, and enjoined from promulgating, issuing, filing, or entering any order or judgment of any kind or character which in any manner seeks to review, vacate, modify, affirm, or reverse the final judgment and sentence of this court heretofore entered herein; and are further absolutely and permanently restrained, prohibited, and enjoined from in any manner interfering or attempting to interfere with the enforcement of the said judgment and sentence of this court or from taking any action which in any manner seeks to disturb the final judgment and sentence of this court.

It is the further order, judgment, and decree of the Supreme Court of Oklahoma that Ben B. Dancy, sheriff of Oklahoma county, Okla., be, and he is hereby absolutely and permanently prohibited, restrained, and enjoined from carrying out the order of the Criminal Court of Appeals, or James S. Davenport, one of the members thereof, requiring the said sheriff to release the said O. O. Owens upon the filing and approval of a bond; and the said sheriff is further absolutely and permanently prohibited, restrained, and enjoined from obeying, enforcing, or carrying out any order or judgment of any kind or character issued by the Criminal Court of Appeals of the state of Oklahoma which seeks to, or directs the said sheriff to release the said O. O. Owens from his custody, or which in any manner seeks to interfere with the enforcement of the judgment and sentence of this court, a certified copy of which judgment and sentence is now in the hands of the said sheriff of Oklahoma county, and which constitutes his warrant and authority for retaining the said O. O. Owens in his custody.

It is the further order, judgment, and decree of the Supreme Court of Oklahoma that the said Ben B. Dancy, sheriff of Oklahoma county, Okla., be, and he is hereby ordered. and directed to enforce the judgment and sentence of this court in all particulars.

Done in open court, and by order of the court, this the 25th day of April, A. D. 1927.

Fred P. Branson,
Chief Justice, Supreme
Court of Oklahoma.

Attest:

Jessie E. Moore,
Clerk of the Supreme Court
of Oklahoma.

Seal

I received the above and foregoing writ on the 25th day of April, 1927, and executed the same on the 25th day of April, 1927, by delivering a true and correct copy thereof to James S. Davenport, Judge of the Criminal Court of Appeals, in person, and the same was served upon Ben B. Dancy, sheriff of Oklahoma county, Okla., by delivering a true and correct copy thereof to Charlie Friss, undersheriff.

Dated this the 25th day of April, 1927.

Solus S. Brooks,

Marshal of the Supreme Court.

Filed

In the Supreme Court
of Oklahoma.
April 25, 1927.

Jessie E. Moore,
Clerk.

Note.—See under (1) 15 C. J. p. 1108, §540; 32 Cyc. p. 623. (2) 15 C. J. p. 862, §186; p. 1108, §541. (3) 15 C. J. p. 1109, §541 (Anno). (4) 15 C. J. p. 1108, §541. (5) 15 C. J. p. 1109, §541 (Anno). (6) 15 C. J. p. 1108, §540. (7) 15 C. J. p. 863, §187 (Anno); p. 1109, §541 (Anno). (8) 13 C. J. p. 99, §155; 29 C. J. p. 197, §233. (9) 13 C. J. p. 99, §155; 15 C. J. p. 1109, §541 (Anno). (10) 29 C. J. p. 197, §233. (11) 15 C. J. p. 1108, §541. (12) 33 C. J. p. 1019, §196; p. 1022, §201. (13) 29 C. J. p. 96, §87.