## DANCY, Sheriff, v. OWENS.

No. 18502.   Opinion Filed July 19, 1927.

(Syllabus.)

### 1. Syllabi Adopted.

The syllabus in the case of State ex rel. Attorney General v. Davenport et al., 125 Okla. 1, 256 Pac. 340, and the syllabus in the case of State ex rel. Attorney General v. Martin, 125 Okla. 24, 256 Pac. 667, and the syllabus in the case of State ex rel. Attorney General v. Owens, 125 Okla. 66, 256 Pac. 704, are readopted as syllabus in the instant case.

### 2. Courts—Supreme Court as Head of State Judicial System.

Under section 1, article 7, of the Constitution, the Supreme Court is the head of the judicial system of the state. Other courts, established by law, are inferior to the Supreme Court of the state.

### 3. Same—Jurisdiction of Criminal Court of Appeals—Superintending Control of Supreme Court.

Section 2, article 7, of the Constitution, grants permissive authority to the Legislature to establish a Criminal Court of Appeals. Under said section the jurisdiction of such court is confined to appeals in criminal cases from the trial courts. The decisions of the said Criminal Court of Appeals are final, but its judgments are limited to appeals in criminal cases and proceedings in aid thereof. Under said section, the Supreme Court is given superintending control of the Criminal Court of Appeals, and may issue any remedial writ named in said section 2, to keep the said court within the jurisdiction granted it by law.

### 4. Same—Other State Courts Without Jurisdiction to Override Judgments of Supreme Court.

Neither the Constitution nor statutes of the state undertake to give any state court the power or jurisdiction to review, modify, override, or vacate the final judgment of the Supreme Court, under the guise of any writ or process, and the attempt of such court to do so is without authority of law, and its orders which, if effective, would so override, annul, and vacate the final order and

judgment of this court are void, and must be so adjudged and decreed by this court when brought to it for review.

**5. Same—Certiorari—Judgment of Criminal Court of Appeals Discharging Prisoner Committed by Supreme Court for Contempt Held Void.**

The opinion and judgment of the Criminal Court of Appeals, rendered in the case of O. O. Owens v. Ben B. Dancy, in cause No. A-6581, on the docket of said court, is properly here on certiorari. The said opinion and judgment is in excess of the jurisdiction of the said Criminal Court of Appeals, and void. The same is quashed, vacated, and set aside, and held for naught.

Original action in Supreme Court to review, on certiorari, a judgment of the Criminal Court of Appeals. Writ granted, and judgment quashed.

Everest, Vaught & Brewer, for petitioner.

BRANSON, C. J. Certiorari was allowed herein. By reason thereof, the record in the case of O. O. Owens versus Ben B. Dancy, Sheriff of Oklahoma County, No. A-6581, on the docket of the Criminal Court of Appeals, is before this court, including the opinion of that court and the judgment entered by it.

In the said cause the opinion concluded and the judgment ordered that the respondent sheriff release from custody the said O. O. Owens. Their legality, validity, and effect are here for review.

Can this court review on certiorari a judgment such as entered by that court? The answer thereto is not of the making of this court, but is found in the Constitution and the statutes of the state. The power of this court herein, if any, is a constitutional power. We must quote the basic law, and if that does not require our action, we cannot excuse ourselves for taking action.

The authority, jurisdiction, and power of the Honorable Criminal Court of Appeals is statutory,—or, to indulge in tautology, it is only what the Legislature gave it—within permissive sanction of the Constitution. This court is the only one known to the jurisprudence of the state charged with determining what that jurisdiction is—and we could not evade this duty if we would.

The opinion of the Honorable Criminal Court of Appeals comprises 127 typewritten pages. Few of the enunciations therein have any bearing upon whether its judgment and order was within legal sanction. Our references to these must be abbreviated, for it serves no useful purpose to meander with the intemperate and rude statements found therein.

Certiorari is a means of review by a superior court of the legality of a judgment of an inferior court where there is absent another prescribed method.

It is too laborious to repeat the history out of which the question here grew. It is understandable by reference to State ex rel. Attorney General v. Davenport et al., 125 Okla. 1, 256 Pac. 340, State ex rel. Short v. Martin, 125 Okla. 24, 256 Pac. 667, and State ex rel. Short v. Owens, 125 Okla. 66, 256 Pac. 704; and we reaffirm the views expressed in the said opinions and only deem it necessary herein to supplement the same.

The judgment of this court, set out as appendix "A" to the said first opinion, is the judgment which the Honorable Criminal Court of Appeals undertook to vacate, set aside, and hold for naught.

But our authority to act, and our command to act is in the Constitution. We quote sections 1 and 2, article 7, thereof (William's Ann. Const., secs. 186, 187):

Sec. 1. "The judicial power of this state shall be vested in the Senate sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

Sec. 2. "The appellate jurisdiction of the Supreme Court shall be coextensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a criminal court of appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law. Each of the Justices shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and make such writs returnable before himself, or before the Supreme Court, or before any district court, or judge thereof, in the state."

The opinion of the Honorable Criminal

Court of Appeals proceeds from many fallacies, one among which is that it has co-ordinate jurisdiction with the Supreme Court of the state. It argues therefrom that it can with impunity, if it sees fit, override the final judgment of this court. It stresses that it has such co-ordinate jurisdiction and such power. If it has power to do what it understood herein to do, the same must be found in the Constitution or statutes of the state, for neither this court nor that court would have any existence, power, or jurisdiction but for the provision of the same.

Is it not intemperate to call that reason logic or law which is a mere assertion that this court has arrogated power to itself where it only declares the Constitution of the state adopted by the people? For the Constitution was not, and is not of the making of this court or the individual members thereof. We can only declare it as we find it. Its language is plain. The Honorable Criminal Court of Appeals refrained from quoting it. The judicial system it inaugurated is harmonious, and there is not to be found therein, or in the statutes enacted by the Legislature thereunder, a discordant note. Could it be that any court would "sell the truth to serve the hour?" Much easier our task would be if we so yielded.

The Honorable Criminal Court of Appeals, in asserting it has co-ordinate jurisdiction with this court, refrains from quoting section 1 of article 7, supra:

"The judicial power of this state shall be vested in * * * a Supreme Court, and such other courts inferior to the Supreme Court as may be established by law."

We pause and call attention to certain language, "a Supreme Court." The article "a," as used here, can have no meaning except one—one Supreme Court.

Then the language follows:

"And such other courts inferior to the Supreme Court as may be established by law."

The last clause contemplates that the Legislature may establish other courts by legislative enactment. in which event all such courts shall be inferior to the Supreme Court. This is important, and it is not of our making. It means no less than what it says. It is the base of our judicial system.

The succeeding section (sec. 2, art. 7) provides that the appellate jurisdiction of the Supreme Court shall include all causes, civil and criminal, "until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law." The last three words are identical with the last three words in the preceding section. Each stamps the courts "established by law" as inferior to the Supreme Court. The original jurisdiction of the Supreme Court "shall extend to a general superintending control over all inferior courts * * * created by law."

It must appear clear that there is only one Supreme Court; that all other courts (we do not refer to the state Senate as a court; it is not so referred to in the Constitution except when it sits as a court of impeachment) are inferior to the Supreme Court, and that the Supreme Court is given a general superintending control over all. To this end the said section authorizes the issuance by this court of the remedial writs mentioned therein, which include "Certiorari." This proceeding invokes the said original jurisdiction of the court to review the judgment of the Honorable Criminal Court of Appeals as an inferior court in the exercise of its general superintending control over it as over other inferior courts.

The opinion of the Honorable Criminal Court of Appeals asserts that it is not inferior to this court.

It was not created by the Constitution; it can be stricken down by the Legislature; it has no general superintending control over other courts of the state; the Constitution permits only a specific power to be given it —appeals in criminal cases, as to which we will hereinafter quote the statute. Can it override the construction given a constitutional question as announced by this court, or announce a different meaning? The matter is, Where is the power to declare the Constitution of Oklahoma? Could two courts in the same sovereign have authority to pass finally on constitutional questions and the validity of statutes thereunder? Such is unknown to our federal system and found in no state. Such could best be characterized as a paradox—legal anarchy. All the language of the Constitution and all the inferences therefrom are to the contrary.

There is to be found in the Constitution only 18 words in regard to a Criminal Court of Appeals. These are found in said section 2, quoted supra, and are, "until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law." This language is not of the making of this court. It in effect is that if the Legislature creates a Criminal Court of Appeals, it shall have exclusive appellate

jurisdiction in criminal cases. Two adjectives are used, to wit, "exclusive; appellate."

Thus the Constitution makes it clear that when, and if, created, its power is limited to appellate jurisdiction in criminal cases. Every lawyer knows, and the Honorable Criminal Court of Appeals should have known, that the word "appellate" has a technical meaning, and that to the effect that a prosecution of error from a trial court may be had seeking the reversal of the judgment of a lower court on alleged error, and in a mode prescribed for prosecuting same.

Section 2, supra, of the Constitution does not permit the Legislature to give the Criminal Court of Appeals any other jurisdiction. In the same section it is declared "the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law."

Had the Constitution intended that a Criminal Court of Appeals, if created, should have jurisdiction other than appellate jurisdiction in criminal cases, would it not have said: "The Supreme Court and the Criminal Court of Appeals, if created, may exercise such other and further jurisdiction as may be conferred upon them by law?"

Our Constitution makes applicable the language used by the Supreme Court of Colorado in the case of People ex rel. Attorney General v. Richmond et al., 26 Pac. 929:

"There can be no doubt about the supremacy of the Supreme Court. This court is placed by the Constitution at the head of the judicial system of the state. From its judgments there is no appeal to any other state tribunal, and its determinations are binding upon the rest of the state judiciary. The Legislature cannot interfere with its existence or supremacy, nor can that body alter the nature of its jurisdiction and duties; and it follows, of course, that without change in the fundamental law the Legislature cannot create a court of co-ordinate final jurisdiction. * * * Every tribunal established by statute, whether clothed with original or appellate powers, must, like the trial courts expressly named in the Constitution, be inferior to the Supreme Court, subject to its superintending control and guided by its decisions. * * *"

The terminology, "criminal cases," has a well-defined meaning. Under the law of this state they are prosecuted in the name of the state either by indictment or by information filed in a trial court having jurisdiction of the particular crime. Under the law of procedure, appeals may be prosecuted when the accused is convicted. In certain cases they may be prosecuted by the state. Such appeals have for their purpose the determination of alleged errors of the trial court in the cause.

This language is so clear that if any confusion arises, it must be by reason of courting confusion, either by a spirit of unwillingness to abide by the language of the law or from other motives which may lead into the realm of speculation unbecoming to any judicial decision.

Further, the legislative authority of the state has never recognized that the Criminal Court of Appeals has a co-ordinate jurisdiction with this court. By virtue of the said section 2, article 7, supra, the first state Legislature (chapter 28, Session Laws 1907-1908) passed a bill entitled, "An Act creating a Criminal Court of Appeals and defining the jurisdiction of said court." In part it is, to wit:

Section 1. "There is hereby created a Criminal Court of Appeals. * * *"

Section 2. "The Criminal Court of Appeals shall have exclusive appellate jurisdiction (note the exact language of the Constitution—ours) in all criminal causes appealed from county and district courts in this state. In any cause appealed to the Criminal Court of Appeals in which the construction of the Constitution of this state or of the United States, or any act of Congress, is brought in question, the said Criminal Court of Appeals shall certify to the Supreme Court of the state the question involving the construction of the Constitution of this state, of the United States, or any act of Congress for the final determination of the question so certified. Thereupon, all further proceedings in said cause in the Criminal Court of Appeals shall await the decision of the Supreme Court, upon such question. Upon the final decision of such question by the Supreme Court, said Supreme Court shall certify its decision on such question to the Criminal Court of Appeals, and said decision of such question by the Supreme Court shall govern said Criminal Court of Appeals."

It is not before us now to determine the exact limitations on the power of said court hereunder. We quote the statutes for that they disclose the legislative intent as to the scope of jurisdiction of that special court. We concede its determinations are final when within its jurisdiction, but it does not follow therefrom that it is not inferior within the meaning of the part of the Constitution quoted.

Article 2, c. 14, Session Laws 1909, is en-

titled, "An act perpetuating the Criminal Court of Appeals," etc. (The first act limited its existence to January 1, 1911.) Section 7 thereof provides that the said court "shall have exclusive appellate jurisdiction in all criminal cases appealed from county and district courts in this state."

Nowhere is there to be found in either of said acts (the latter supplementing the former) a jurisdiction other than appellate jurisdiction in criminal cases. Section 10 of the last-named act authorizes the said court to issue writs of habeas corpus, but the use of said authority is limited to its exercise in aid of its appellate jurisdiction in criminal cases; for, otherwise the act giving power to issue any such extraordinary writ would be in excess of the jurisdiction the Constitution permitted the Legislature to give to such court, and void. That construction should be given to the statute which would leave it in effect.

Being a court given a status by said constitutional provisions inferior to the Supreme Court, certiorari to review its judgments, where they exceed the authority given said court, is a remedy to keep the said court within the exercise of proper jurisdiction and thus preserve the symmetry of the judicial system, of which the Supreme Court is the head.

As quoted, supra, section 1 of said act of 1908 provides:

"There is hereby created a Criminal Court of Appeals," etc.

This is the creative provision; and if its omission from the Code of 1910 operated to repeal the provisions of the said Act of 1908, then there is no Criminal Court of Appeals in existence; for the said section (2 of art. 7), as held by this court in the case of State ex rel. v. Davenport, supra, was a special permissive provision of the Constitution authorizing the Legislature to enact a special or specific statute, creating such a court with a jurisdiction clearly limited by the Constitution itself.

The Act of 1908, quoted supra, merely continued the court and carried forward the said creative provisions contained in section 1 of the said last-named act. By the saving clause in the Act of March 3, 1911, Session Laws 1910-1911, p. 70, the omission of the said provision from the Code did not operate to repeal the act creating the Criminal Court of Appeals, but said act is in full effect.

The opinion now on review was rendered in an original action brought in said court in April, 1927, by O. O. Owens against Ben

B. Dancy, as sheriff of Oklahoma county. The prayer was that he be ordered released from custody, the effect of granting which was to vacate, set aside, annul, override, and hold for naught the final judgment, decree, and sentence of this court rendered April 23, 1927, in cause No. 18081, 125 Okla. 66, 256 Pac. 704, on the docket of this court. The Honorable Criminal Court of Appeals purported to grant the relief prayed. The only parties thereto were the petitioner, the said O. O. Owens, and the said Ben B. Dancy, sheriff of Oklahoma county, respondent. The return of the sheriff to the said writ disclosed to the said Honorable Criminal Court of Appeals the judgment of this court under which he retained the custody of the petitioner. (125 Okla. 12, 256 Pac. 340-Appendix "A")

No one who will give the phraseology of the statutes as to the power of said court the meaning the language employed ordinarily conveys, need be confused, unless confusion be his object and purpose. Legislative enactments could hardly be more definite and certain, and jurisdiction and power of a special court could hardly be—by the choice of language—more clearly fixed.

The opinion now on review is in direct conflict with the holding of this court in the case of State ex rel. Attorney General v. Davenport et al., 125 Okla. 1, 256 Pac. 340, and the opinion of this court in cause No. 18080, 125 Okla. 24, 256 Pac. 667, and in direct conflict with the opinion of this court in cause No. 18081, 125 Okla. 66, 256 Pac. 704, entitled "State of Oklahoma ex rel. Attorney General v. O. O. Owens."

The said opinion in 125 Okla. 24, 256 Pac. 667, was not rendered by the regularly constituted members of this court, but the court was composed of members of the bar, commissioned under constitutional authority to try that particular case. Nine members of that special court concurred in that opinion. Eight members of the regularly constituted Supreme Court rendered the opinion in 125 Okla. 66, 256 Pac. 704. The said opinions, bearing on the same questions as here, were therefore concurred in by 17 judges, nine of the special court and eight of the regularly constituted court, which are sought to be overturned by the reasoning of two members of the Criminal Court of Appeals.

The opinion rendered in the case of State ex rel. Attorney General v. Davenport et al. defined the jurisdiction of the Criminal Court of Appeals in this case and prohibited the said court and the judges thereof from in any wise interfering with the final judg-

ment of this cause attached as appendix "A" to the said opinion. But the Honorable Criminal Court of Appeals disregarded the opinion of this court and attempted to override its authority and to vacate its judgment. No case cited in the said opinion, when analyzed, warrants or justifies such attempt. No attempt is made by the said honorable court to justify its exercise of pretended authority or to point out where such pretended authority is given it in the Constitution or statutes creating the said court and defining its jurisdiction. It fails to recognize in its belligerent invasion of provinces of the law that its power to act is derived from the law-making authority of the state. It does not discuss or quote the statutes set out hereinbefore, to which it owes its existence, and beyond which it exercised with propriety no authority. In fact, it apparently recognizes no limitations and concedes no reason or respect to the interpretation of the Constitution and civil statutes of this state by the constitutional Supreme Court, created by the sections of the Constitution above quoted.

We have searched the books in vain to find any other court which has been granted by law appellate jurisdiction in criminal cases from lower courts—and that jurisdiction only—which has ever before assumed to take original jurisdiction in a civil proceeding such as was there. The lengthy attempt at erudition nowhere undertakes to point out, by reason or citation of authority, the character of the proceeding before it; or to point out in the statutes giving the Honorable Criminal Court of Appeals legislative existence. wherein it has original jurisdiction in such a proceeding. It wholly omits to quote the 18 words found in section 2, article 7, in reference to it as a court. or to point out that the Legislature in exercising the authority granted by the said 18 words had fixed its jurisdiction as purely appellate in criminal cases from **county and district courts of the state;** it fails to point out that the said 18 words in reference to its existence found in the Constitution of the state limits the legislative authority in creating it. It fails to point out that appellate jurisdiction is well defined and well understood; that if any other attempted jurisdiction was given to it by the Legislature it would be beyond constitutional sanction.

The case was, and is, a civil proceeding. It is not a civil proceeding because this court says so.

In the case of Ex parte Tom Tong, 108

U. S. Sup. Ct. Rep. 556, that court, speaking through Chief Justice Waite, said:

"The right of habeas corpus is the remedy which the law gives for the enforcement of the civil right of personal liberty. Resort to it sometimes becomes necessary because of what is done to enforce laws for the punishment of crimes; but the judicial proceeding under it is not to inquire into the criminal act which is complained of, but into the right to liberty notwithstanding the act. Proceedings to enforce civil rights are civil proceedings and proceedings for the punishment of crimes are criminal proceedings. * * * The prosecution against him is a criminal prosecution, but the right of habeas corpus which he has obtained is not a proceeding in that prosecution. On the contrary, it is a new suit brought by him to enforce a civil right which he claims as against those who are holding him in custody under the criminal process."

In the case of Kurtz v. Moffitt et al., 115 U. S. 487, 29 L. Ed. 458, the Supreme Court of the United States said:

"A writ of habeas corpus, sued out by one arrested for crime, is a civil suit or proceeding brought by him to assert the civil right of personal liberty against those who are holding him in custody as a criminal." Barry v. Mercein, 5 How. 103; In re Burrus, 136 U. S. 586; Ex parte Milligan, 4 Wall. 110; Ex parte Terry, 128 U. S. 301; In re Boardman, 169 U. S. 43.

These decisions are from the Supreme Court of the United States, and their adoption by this court might be a sufficient shield against a charge by the Honorable Criminal Court of Appeals of assumption of authority. We hold that such a proceeding as was instituted in the Honorable Criminal Court of Appeals was and is a civil proceeding; and the attempt of the said court to entertain the same and to render any judgment therein was clearly in excess of the authority given it by the statute creating the said special court and defining its jurisdiction. Being such, we could reach no other conclusion than that its judgment is without legal force and effect, and wholly void.

Reaching this conclusion. we might desist from further discussion of the opinion and judgment here under review but for the fact that some statements in the said opinion are subversive of the law of this state. We deem it of public interest that we briefly refer to some of them and point out for the guidance of the Criminal Court of Appeals and other courts, that they may not in the future be led into error where similar questions may arise.

The pretended holding that the disqualification extends to the court to try a contemnor against which contempt is committed, is a misstatement of the law. This court has settled the rule in this jurisdiction by the opinions of this court cited supra, supported by authorities too numerous to be tabulated, which are cited therein, and the reasoning and controlling force of which authorities are not referred to in the opinion of the Honorable Criminal Court of Appeals now under review.

The assertion in the said opinion that the Criminal Court of Appeals and the Supreme Court, and judges thereof, have concurrent original jurisdiction in habeas corpus is a misstatement of the law of this state. An original action disconnected with its appellate jurisdiction to obtain a writ of habeas corpus cannot be maintained in the Criminal Court of Appeals, for no such jurisdiction has been granted that court, and its right to issue such writs is auxiliary to its appellate jurisdiction in criminal cases and in aid therof. In this case it had no appellate jurisdiction from the final judgment and decree of this court, for neither the Constitution nor statutes of the state purport to grant the same.

The assertion in the said opinion that the contempt was a crime—a misdemeanor—and punishable as such, is not the law of this state, as settled by the opinions above cited from this court, based upon the numerous decisions, state and federal, therein quoted, reference to none of which is made in the opinion now under review. The opinion of this court (special judges presiding), concurred in by nine members in said cause No. 18080, 125 Okla. 24, 256 Pac. 667, found the respondent therein, H. B. Martin, guilty of contempt, and a fine of $1,000 was assessed against him. Under the misdemeanor statute of the state, a fine of $500 is the limit. The opinion of the said court (nine Justices concurring), within its constitutional jurisdiction, settles the law of this state on that question against the holding in the opinion now under review.

The same conclusion was reached by this court (the regular constituted members presiding) in the said cited cases.

The assertion in said opinion that the Criminal Court of Appeals has final jurisdiction in matters of contempt, based upon the idea as asserted therein that the same was a crime, is not the law of this state. That court expressly held in 1913:

"The power to fine and imprison for contempt is a necessary attribute of a court. It is a power inherent in all courts of record and coexisting with them by the wise provisions of the common law. A court without the power to enforce its orders, judgments, and decrees would be a disgrace to the laws which created it. Such a condition would but result in the degradation of courts and to make them truly subjects of contempt." Nichols v. State, 8 Okla. Cr. 550, 129 Pac. 673.

This opinion was written by the author of the opinion now under review. In 1916, in the case of Smith et al. v. State, 12 Okla. Cr. 513, 159 Pac. 941, in the opinion by Judge Brett, concurred in by the gentleman who wrote the opinion now under review, it is said:

"That court alone in which a contempt is committed, or whose order or authority is defied, has power to punish it, or entertain proceedings to that end. Courts which have no criminal jurisdiction can punish for so-called criminal contempt, because the power to do so is inherent, and necessary to the efficiency and very existence of the court."

These cases set out the law recognized by the Criminal Court of Appeals in 1913 and 1916. It is true that the individuals involved apparently were humble citizens. In the instant case there is nothing to change the law; there is a difference in the individuals. The instant opinion under review cites the opinion based on the record in cause No. 18080, on the docket of this court. In that record, from the mouth of Mr. Owens as a witness, the Honorable Criminal Court of Appeals could have discerned that he was an able and efficient monetary subsidizer of campaigns. The Honorable Criminal Court of Appeals should not change the status of the law applicable as to him and make it different from the law applicable to the citizens involved in the case written in 1913, and the case written in 1916.

This court concedes that the possession of wealth and the ability to subsidize campaigns ought not to deprive the person so fortunate of the right to avail himself of the rules of the law. This court has never permitted the ponderous power of monetary influence to prevent its giving those possessing the same the equal protection of the law. But this court cannot understand why the Honorable Criminal Court of Appeals, without reference to the cases last mentioned, in which it is made clear that the very existence of a court depends upon its power to punish for contempt. can apply a rule to this individual different from the rules it applied in 1913 and 1916. We cannot concede, and will not concede, that the attempt of the said court to override in behalf of

this individual the rules it itself had announced, as well as the settled law of this state as announced by this court, can deserve at the hands of this court other than repudiation according to the constitutional authority given it in its superintending control.

In the opinion of the special Supreme Court filed May 21, 1927 (State ex rel. Atty. Gen. v. Martin), concurred in (not by the members of this court regularly elected) by a special court authorized by the Constitution (Judge Utterback of Durant; Judge Henry of Mangum; Judge Trice of Coalgate; Judge Brown of Muskogee; Judge Swank of Stillwater; Judge Diffendaffer of Lawton; Judge Lewis of Davis; and Judge Hewitt of Enid, all concurring), announces in the first paragraph of the syllabus:

"Proceedings to punish for contempt, as herein initiated, are not a criminal prosecution. Such are regarded as sui generis."

The opinion under review undertakes to overturn this.

An opinion written by Justice Riley of the regular Supreme Court, filed May 14, 1927 (State ex rel. Atty. Gen. v. Owens), and concurred in by eight members of this court, announces the same rule. The rules therein announced are supported by cases from practically every state in the Union of states. The opinions cite the same. No contrary rule is announced by any court, save and except the Honorable Criminal Court of Appeals in the instant case.

The opinion throughout refers to the individual members of this court by name and states that allegations of the petitioner are taken as true because not denied. They were known by the Honorable Criminal Court of Appeals to be false and not founded in truth and so held by the opinion of the special court filed May 21, 1927. The Honorable Criminal Court of Appeals had before it the petition on which it undertook to give the relief prayed, and it disclosed that no member of this court was a party to that proceeding or had any opportunity to admit or deny any allegation. This statement could have been actuated by reasons which lead again into realms of speculation into which no judicial opinion should go.

The case of State ex rel. v. Davenport, supra, concludes as follows:

"The writ of prohibition must, therefore, run to the Criminal Court of Appeals prohibiting, restraining and enjoining it, and each of the judges thereof, from in any wise interfering with the enforcement of the judgment of this court heretofore entered in this cause."

The Criminal Court of Appeals refrains from pointing out the distinction in the process "writ of habeas corpus," by which a petitioner is brought before a court, and the jurisdiction of the court to grant the prayer. Its dissertation thereon is a mere barrage held up as a shield while it constitutes itself an executioner of the judicial system of a sovereign state. Its fallacy is pointed out by an illustration, to wit: Smith is sentenced to jail by the United States Court for the Western District of Oklahoma. He applies to this court for a writ of habeas corpus and prays that he be discharged. This appearing on the face of the petition, this court must say, "We cannot grant your prayer for release, because we have no power to override the judgment of the court committing you."

Again: The Supreme Court of the United States enters a judgment committing a contemnor. He applies to the United States Court at Oklahoma City for a writ of habeas corpus and prays that he be released. Would even a layman say that that court would not reply: "This court has power to issue a writ of habeas corpus, but it cannot grant your prayer by overriding the final judgment of the Supreme Court of the United States."

This court prohibited the Criminal Court of Appeals from undertaking to vacate its judgment.

The Honorable Criminal Court of Appeals asserts that the contemnor herein, Owens, might be required to serve 13 years. This is begging the question in the garb of argument. The judgment referred to committed Owens for one year and no longer. If the fine is not collected on the execution ordered, no imprisonment is inflicted by reason of such failure.

Again, that court asserts that it would not object to any district court reviewing its final judgment. Doubtless it has this conception of the law. When such assertion was made it knew the Supreme Court of Oklahoma would not permit such action, but would prevent the same as to any judgment entered by that court within its jurisdiction and would do so in the exercise of a superintending control over all inferior courts.

We hold, without further discussion, that under the statutes creating the Criminal Court of Appeals its jurisdiction and powers are defined. Its opinion and pretended judg-

ment is in excess of jurisdiction granted it by law. Should this court, charged with a duty under the constitutional provisions above quoted, permit the same to stand, the judicial authority granted for the time to the individuals now composing it should be by an indignant public stripped from them and they should be relegated to the execration due him, who, knowing his duty, refuses to perform it. If rules announced by the courts for one individual can be overturned in behalf of another, the only safeguard to personal rights and equality before the law is stricken down.

This court is commanded by the fiat of the Constitution itself not to permit such courts to carry out this sort of purpose or this sort of intent. The opinion herein is subversive of the rules of law previously laid down by the Criminal Court of Appeals itself, and overturns the settled law of this state from this court, based upon the decisions of the courts—both state and federal. It is the duty of this court to quash, vacate, set aside, and hold for naught the opinion and judgment of the Criminal Court of Appeals now before us.

It is, therefore, the opinion, judgment, and conclusion of this court that the opinion and judgment here under review by certiorari be declared not to state the law of Oklahoma: that it is insubordinate, in excess of the jurisdiction given by the Constitution and statutes to it, and an attempt to bring about a conflict when the law permits none: that it is misleading to other courts of the state, and destructive of the judicial system of which this court is the head.

It is, therefore, quashed, vacated, set aside, annulled, and held for naught, and all courts of this state are advised not to undertake in any wise to follow the same. If more stringent means are necessary to keep the Criminal Court of Appeals within the legislative authority granted it, such means are adequate, and if necessary, will be used, however reluctant this court may be, if such necessity is brought about by that court.

The attempt to decapitate the judicial system of Oklahoma, to which birth was given by the Constitution, is frustrated by the might of the law itself, to which this court does obeisance and compels that court to bow.

MASON, V. C. J., and PHELPS, LESTER, CLARK, and RILEY, JJ., concur.

HUNT and HEFNER JJ., absent.

HARRISON, J. (dissenting). I very deeply regret to be forced to dissent from the majority opinion, but after a careful and unbiased analysis of what I consider to be the underlying question involved, I am constrained to believe that the majority opinion is not rested upon the correct premise. To my mind, the sole underlying and decisive question is simply whether the Criminal Court of Appeals has authority to set aside the final decisions and mandates of this court. Under the Constitution and statutes there is but one answer, No. Yet that is what the Criminal Court of Appeals has sought to do, what it has attempted to do in this case; therefore, I see no need for discussing or passing upon the relative superiorities of the two courts, nor whether the one or the other be inferior. The question is not what the Criminal Court of Appeals might have power to do in given cases, but whether it has any semblance of power to do what it attempted to do in this case, viz., set aside the final order, judgment, and mandate of this court.

Outside of the parties immediately interested in this litigation, I doubt whether a lawyer can be found in the state who would for a moment contend that the Criminal Court of Appeals has any such authority.

This court need not attempt to define what the Criminal Court of Appeals may do, because, in view of the present situation, it is impossible to foresee what may be attempted. But this court should say, once and forever, that the Criminal Court of Appeals has no semblance of authority, either from the statute or Constitution, to set aside a final order, judgment, and mandate of this court.

The basis of its assumption of jurisdiction in this matter is found in paragraph 14 of the syllabus to the opinion under review, to wit:

"When a person is held in custody under a void order of commitment, or is imprisoned without due process of law under the sentence of any court of the state, it is not only within the authority of this court, but it is its duty, upon habeas corpus, to inquire into the illegality of the commitment when the matter is properly brought before it by petition, and if it be adjudged that the order of commitment was made without authority of law, the person will be entitled to a discharge from custody in order to preserve the constitutional right of all persons not to be deprived of liberty without due process of law."

The language of the above syllabus—

"When a person is held in custody under a void order of commitment, or is imprisoned without due process of law"
—constitutes the real basis for its assumption of jurisdiction. Hence, the question arises, When this court, in a matter properly before it, has passed its final judgment and issued its final commitment, then what court in this state has judicial authority to say that such commitment is void and set it aside? The answer is that no state court has any semblance of such authority.

I believe the commitment upon which the Criminal Court of Appeals assumed jurisdiction, aside from the fact that it constitutes the final mandate of this court, is without material defect even in form.

But even if it were defective in form, and though the Criminal Court of Appeals might entertain the idea that it was void, and that the party confined had been deprived of due process of law, still that court has no authority to set it aside.

The judgment of this court, in a matter properly before it, that the commitment is valid, and that the party imprisoned has been afforded due process of law, is final, under the Constitution and statutes and other authorities cited in the majority opinion, and the Criminal Court of Appeals, nor any other state court, has any authority to set it aside.

If it be true that the complaining party has in reality been denied due process of law, then the federal courts are open to him and have authority to grant him whatever relief he may show himself entitled to receive, but no state court has authority to set aside the final orders, judgments, and mandates of this court.

But the Criminal Court of Appeals has assumed to say that the mandate of this court is void, and the mandate being void, the party has been deprived of due process of law, hence we will assume to set aside the mandate of the Supreme Court.

In its attempt to justify the exercise of jurisdiction, the Criminal Court of Appeals resorts to a lengthy discussion and exhaustive review of authorities on the sacred right of the writ of habeas corpus.

We will not take the time nor give space to review and answer the discussion by the Criminal Court of Appeals of this question, for, frankly, we do not feel that it merits answer.

No one will deny that any person deprived of his liberty has the right to apply to petition, for a writ of habeas corpus, yet no one would claim that every person who applies for a writ of habeas corpus is entitled to a discharge under such writ. If this were true, that every applicant for a writ of habeas corpus is entitled to a discharge, then our jail and penitentiary doors would immediately be spread ajar, and if the theory upon which the Criminal Court of Appeals bases its authority be true, then upon the same theory this court could, under a writ of habeas corpus, discharge every convict confined in the penitentiary under final order and judgment of the Criminal Court of Appeals.

It is most fervently hoped, however, that this court will never be so constituted as to attempt any such thing, and were it to attempt to do so, then it would be the duty of the Chief Executive to summon the militia of the state and call a halt. Why? Because, under the statutes and Constitution, the final judgment of the Criminal Court of Appeals in criminal cases is final, and this court and all other courts of the state are without authority to interfere or set aside such final judgment.

Any convict within the walls of the penitentiary has the right to make application for a writ of habeas corpus, and the court to which he applies may inquire into the authority by which he is restrained of his liberty, but when it finds that he is imprisoned under a final judgment of the Criminal Court of Appeals, then that constitutes a complete answer to the application for the writ.

Likewise, O. O. Owens, the party in question in this case, had the right, secured by the Constitution, to apply for a writ of habeas corpus, and the Criminal Court of Appeals had a right to inquire into the authority by which he was imprisoned, but when it ascertained that he was imprisoned under the final order and judgment of this court, then the power of the Criminal Court of Appeals ceased, and if he had been denied any rights guaranteed to him by the federal Constitution, the federal courts were open, with authority to grant relief, but the Criminal Court of Appeals had no authority, and we may repeat that there is not a word either in the statutes or Constitution which gives any semblance of reason for the exercise of such authority.

As Mr. Chief Justice Branson in the majority opinion in effect well says: "There should be no conflict between the two courts; there is no ground for conflict; the language of the Constitution and statutes is clear."

In my judgment there is no ground for

conflict, nor justification for this assumption of jurisdiction by the Criminal Court of Appeals which renders possible a state of confusion and chaos which is as inexcusable as would be intolerable. But, while I am firmly of this opinion, I am still of the opinion that a writ of certiorari should not issue. Such a writ is essentially based upon the authority of the court issuing same to review the action of some tribunal over which the issuing court has a superintending control under the provisions of the Constitution and law. In my judgment this court has no superintending control over the Criminal Court of Appeals, but when the Criminal Court of Appeals attempts to interfere with the final orders and judgments of this court, then this court, the matter being brought to its attention, could by special order direct the parties interested to obey mandates of this court and to disregard the mandates of any other state court which seeks to interfere with the final orders of this court.

In other words, when the Criminal Court of Appeals having so obviously invaded the constitutional province of this court, and attempted to interfere with the constitutional duties of this court, its attempted interference should be treated with that degree of disregard which its groundlessness merits, and Sheriff Dancy be directed to disregard the orders and mandates of any other state court, and to obey the mandates of this court.

I do not concur in the conclusion that this court has a superintending control over the Criminal Court of Appeals. In my opinion, the Constitution has clearly recognized the necessity for, and authorized the creation of, two separate, independent branches of jurisprudence, viz., civil and criminal, with a final head to each branch. that each branch is superior within its prescribed jurisdiction, and neither has a superintending control over the other, and neither has authority to invade the province of the other, and where one branch does assume to interfere with the proper functions of the other, its attempt should be treated with disregard and the parties affected directed to obey the orders of the branch thus invaded and leave it to the Executive Department to enforce the orders of the branch whose jurisdiction has been unlawfully invaded. and interfered with.

Note.—See under (2) 15 C. J. p. 1108, §540 (Anno). (3) 15 C. J. pp. 1108, 1109 (Anno). §541. (4) 15 C. J. p. 1108. §540 (Anno). (5) 15 C. J. p. 1108. §540; p. 1109 §541 (Anno).