**In the Matter of Tauras MEEKINS and Kevin Meekins, children under 18 years of age.**

**Delores MEEKINS, Appellant,**

**v.**

**The DEPARTMENT OF INSTITUTIONS, SOCIAL AND REHABILITATIVE SERVICES, Appellee.**

**No. 48659.**

Court of Appeals of Oklahoma, Division No. 2.

June 1, 1976.

Released for Publication By Order of Court of Appeals June 24, 1976.

James H. Hiatt, Oklahoma City, for appellant.

Donald L. Ritter, Oklahoma City, for appellee.

NEPTUNE, Judge.

Pursuant to 10 O.S.1971 § 1101 and following sections, the two children of appellant, Delores Meekins, were declared dependent and neglected and made wards of the court. That adjudication is not here contested.

Subsequently, however, a supplemental petition was filed by the Department of Institutions, Social and Rehabilitative Services, seeking to terminate the parental rights of appellant mother. A copy of the petition with "summons and notice" was personally served on appellant, directing her to appear with the children on May 27, 1975, at 3:00 p.m. before the District Court of Oklahoma County at the County Courthouse at Oklahoma City.[1]

1. Curiously, the "summons and notice" does not state that there will be a trial or hearing upon the allegations of the petition, which she may defend against.

Appellant failed to appear and in her absence the trial court terminated her parental rights. On June 19, 1975, within the time allowed by law, she filed a Petition to Vacate Judgment pursuant to 12 O.S.1971 § 1031 et seq.

The trial court issued an Order Denying Hearing on Petition to Vacate Judgment and overruled the petition to vacate, therein making the following findings of fact and conclusions of law:

"I.

"That the allegations of the petition to vacate judgment are true, and that the mother of the above-named children was prevented by unavoidable casualty and misfortune from appearing in Court and contesting the termination of her parental rights on the 27th of May, 1975.

"II.

"That in accordance with the terms and provisions of Title 12, Oklahoma Statutes, Section 1031 and following sections, and the cases construing same, the order terminating the parental rights of Delores Meekins should be vacated.

"III.

"That the Court in this case is without authority to vacate the order terminating the parental rights of Delores Meekins, due to the express command of Title 10, Oklahoma Statutes, Section 1118, providing in part that an order terminating parental rights may not be modified. The Court is of the opinion that vacation of an order is a form of modification, and therefore this Court may not vacate its previous order terminating the parental rights."

From the order denying hearing and overruling the petition to vacate, the mother appeals.

Since the filing of the appeal, the Oklahoma Supreme Court issued an Order staying the portion of the trial court order which authorized the Department to consent to adoption of the children.

Section 1118 of the juvenile code states:

"Any decree or order made under the provisions of this Act may be modified by the court at any time; provided, however, that an order terminating parental rights, and an order committing a child adjudicated to be delinquent to the Department, may not be modified."

Appellant first urges that the trial court misconstrued and misapplied § 1118. Because we agree with appellant's primary premise, it is not necessary that we consider her alternative assignment of error that the statute violates the state and federal constitutions.

▇ Preliminarily, it is appropriate that we recognize that the clear purpose of § 1118 is to accord to orders terminating parental rights some significant stability and finality. This will serve the best interests of everyone involved, particularly of the children, who would be adversely affected if continuing litigation were permitted with the result that they might be bounced back and forth between different sets of parents.

▇ We also recognize that the general tenor and intent of the juvenile code, as expressed in § 1129, is to serve the best interests of the children. A presumption exists that the best interests of children ordinarily are served by leaving them in the custody of the natural parents, the persons who are usually expected to have the strongest bond of love and affection and to be best able to provide them these needed qualities. *York v. Halley*, Okl., 534 P.2d 363 (1975). The presumption can be and often is rebutted, but a meaningful hearing should be a prerequisite to such rebuttal; and certainly, children should not be permanently removed from their parents by an order terminating parental rights without such a meaningful hearing. *In re Wright*, Okl., 524 P.2d 790 (1974).

■ We think that the interpretation which the trial court put upon § 1118 is inconsistent with the general purposes of the juvenile code and with the tenor of the language of the high court cases above cited. The trial court's interpretation of § 1118 would prevent new trials or vacations of orders in all cases concerning all children and would interfere with the rights of parents prevented by accident, misfortune, fraud, or any other statutorily appropriate reason to obtain a new trial. We think the construction put upon the statute is erroneous, and we are unable to discover anything in its terms compelling the result reached by the trial court.

■ The text of the section is that "an order terminating parental rights . . . may not be modified." The trial court held that the word "modified" necessarily included the "vacation" of an order. There is a substantial difference in the meaning of the two terms. The legislature confirms the difference in the text of 12 O. S.1971 § 1031, where it is stated that "The district court shall have power to vacate *or* modify its own judgments or orders . . .." (emphasis ours) "Vacate" means "To annul; to set aside; to cancel or rescind; to render an act void"; while "modification" is defined as "A change; an alteration which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." "Modify" is similarly described as "To al-

ter; to change in incidental or subordinate features; enlarge, extend; limit, reduce." Black's Law Dictionary 1155, 1717 (4th ed. rev. 1968).

■ To vacate something is to destroy it, to eliminate it, to render it a nullity. Modification, on the other hand, could be described as a small change, adjusting of details, rather than dealing with the heart of the matter and eliminating it, as is done by vacating an order. The relief sought in court actions follows the meanings above stated. Modification is sought when a change of condition requires revision of an order. Vacation, however, is a remedy usually employed when some error or accident makes the continued existence of that order undesirable. When § 1118 says, "may not be modified," it means that and no more; it seeks to eliminate changes in the details of an order based upon changes of condition but does not purport to prevent a court from vacating an order should the appropriate grounds as specified by law be found to exist.

■ The section in question is silent as to the rights of persons whose parental interests are terminated to have a new trial in accordance with the provisions of the code of civil procedure, to appeal, and otherwise to avail themselves of the remedies provided those aggrieved by an erroneous order. These rights and remedies, we think, were not intended to be stricken down.[2]

2. Appellant's brief aptly summarizes the apparent intent of the restrictive statute:
"The general effect of the Juvenile Code is to give large discretionary powers to the Judge, the person who might be expected to be in possession of all the evidence and best able to arrive at a decision as to what is in the best interest of the children brought before him. In some circumstances, it appears that this discretionary power given to the Judge to change custody, modify his orders, and otherwise exercise continuing jurisdiction over a case so as to continually serve the changing best interest of the child, is intended by the authors of the statute to be limited. One such situation, embraced by Section 1118, is that in the event a child is placed with the Department of Institutions, Social and Rehabilitative Services, a policy decision that the Department subsequently will be best able to decide where the child should be placed comes into effect. That is, a court committing a child to the Department may not dictate to the Department that the child be placed at Taft, subsequently transferred to some other location, and then subsequently placed on trial leave in the home. These decisions belong to the Department. Accordingly Section 1116[(a)](3) provides that a commitment of a child to the custody of the Department shall be for an indeterminate length of time, and to further implement this

Appellee seeks to sustain the trial court's interpretation by asserting the applicability of the principle stated in *Reubin v. Thompson,* Okl., 406 P.2d 263 (1965) as follows:

"Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and . . . prescribes different rules and procedure from those in the general statute . . . the special statute applies . . . and [not] the general [one]."

Title 12 O.S.1971 § 1031, the general statute, refers to acts of vacating and of modifying. The special statute deals only with modifications. Though the special statute may have in some way attempted to limit the authority of courts concerning modifications of certain orders, it did nothing to affect the general law as it involved vacation of judgments. The principle quoted is inapplicable.

The judgment is reversed, and the trial court is instructed, in view of its findings as to the validity of the allegations of the petition, to sustain the petition to vacate.

BACON, P. J., concurs.

BRIGHTMIRE, Judge (concurring specially).

In general I agree with the majority opinion. However, I think the circumstances raise a more fundamental question —one about the constitutionality of § 1118, namely, its potential for depriving a parent of procedural due process [1] and perhaps for encroaching on inherent judicial power of the court.[2]

Two essentials of due process are: (a) notice of a hearing and (b) an opportunity to be heard. *Dodds v. Ward,* Okl., 418 P. 2d 629 (1966); *Greco v. Foster,* Okl., 268 P.2d 215 (1954).

Here the petitioning mother was given notice of the hearing—albeit a questionable one—but the court found the fact to be that she was "prevented by unavoidable casualty and misfortune from appearing in Court and contesting the termination of her parental rights." This being true, can it be said the mother had an opportunity to be heard? Suppose an accused in a criminal case is involved in a wreck on the way to court the morning of trial and is rendered unconscious for several hours. Does anyone suppose that if the court proceeds with a trial, the defendant will not have a valid complaint that he was deprived of a constitutional right to be heard and defend? The chance that chance may operate to destroy one's chance to be heard is not a mystery to be solved, but a reality to be recognized by the court in shielding the constitutional rights of individuals from statutory-interpretational abridgment.

In my opinion § 1118 cannot constitutionally be construed as depriving the court of the power to vacate a parental-rights-termination judgment when a timely showing is made that the affected parent was unavoidably prevented from being heard— a showing that was made by petitioner here. Indeed, in my opinion the judge has no discretion under such circumstances—he must vacate the judgment.

---

policy Section 1118 states that committing a child adjudicated to be delinquent to the Department may not be modified.

"It is suggested that that part of Section 1118 concerning terminations similarly is designed to introduce an element of stability into termination cases by preventing the trial Court subsequent to its order from changing that order in small details, such as subse-

quently reserving the right to the court to consent to adoption, or setting a deadline in which the parents must perform certain acts or have their rights terminated."

1. U.S.Const. amend XIV, § 1; Okla.Const. art. 2, § 7.

2. Okla.Const. art. 7, § 1.