Howard CARDER, Jr., and Howard Carder, Sr., Petitioners,

v.

The COURT OF CRIMINAL APPEALS of the State of Oklahoma, and John Maley, Judge of the District Court of Okmulgee County, and Department of Institutions, Social and Rehabilitative Services of the State of Oklahoma, Respondents.

No. 51477.

Supreme Court of Oklahoma.

Oct. 3, 1978.

Rehearing Denied June 11, 1979.

James D. Jordan, Okmulgee, for petitioners.

E. Stephen Briggs, Consulting Atty., DISRS, Oklahoma City, Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst., and Jerry Earl Benson, Legal Intern, Oklahoma City, for respondents.

SIMMS, Justice:

It speaks well of our bifurcated civil-criminal appellate system that there has not been a jurisdictional conflict between this Court and the Court of Criminal Appeals

for more than fifty years.[1] This scarcity of conflict is a testament to both the clarity of jurisdictional boundaries between the two Courts and the constant willingness of the members of each Court to observe and comply with their jurisdictional restrictions.

Petitioners assert that this action squarely presents us with such a jurisdictional conflict. They contend that over their objections, the Court of Criminal Appeals entertained an original action for mandamus (O–77–656) brought by the Department of Institutions, Social and Rehabilitative Services (Department) over which that Court did not have jurisdiction, as jurisdiction was properly in this Court. Petitioners argue that the Court of Criminal Appeals' purported determination of that cause, adverse to Petitioners, was beyond its power to render and they seek relief from this Court.

The ultimate question at issue is this: once a child has been declared delinquent, adjudged a ward of the court, and committed to the custody of the Department, does the juvenile court's jurisdiction over that child cease so that the court exceeds its jurisdiction when it enters an order dismissing the juvenile action?

The facts which gave rise to this action are these. On March 3, 1977, based upon allegations of verified petition in case number J–77–14, Honorable John Maley, Judge of the District Court of Okmulgee County, entered an order adjudicating Howard Carder, Jr., a delinquent child and ward of the court, and ordered his temporary custody placed with the Department. On May 12, 1977, Judge Maley entered a further dispositional order leaving the order of March 3, in full force and effect. That adjudication and disposition were not appealed and are not at issue here.

On July 5, 1977, Howard Carder, Sr., father of the child, filed a change of custody motion in J–77–14, requesting the return of his son's custody to him. The substance of that motion was that Howard should be returned home because he had been physi-

cally abused and injured at Boley State School for Boys where he had been placed by his custodian, the Department.

The Department then sought a writ of prohibition (P–77–531) from the Court of Criminal Appeals to prevent Judge Maley from holding hearing on the change of custody motion. The Department argued that the Judge had no authority to conduct any further hearings in J–77–14 because under 10 O.S.1971, § 1116(a)(3) and 10 O.S.1971, § 1118,[2] the commitment of Howard's custody to the Department deprived the juvenile court of further jurisdiction. The Court of Criminal Appeals, on August 10, 1977, assumed jurisdiction and granted the writ prohibiting further hearing on the change of custody motion. Neither the prohibition action nor the change of custody motion from which it arose are before us but they are mentioned here to show the full history of the instant action.

Thereafter, on September 6, 1977, Judge Maley entered an ex parte order dismissing case number J–77–14 against Howard without prejudice. The Department then brought its action for mandamus (O–77–656) in the Court of Criminal Appeals praying that Judge Maley be directed to vacate his order of dismissal. Department argued that the Judge had no jurisdictional power to enter the order; that under § 1116(a)(3) and § 1118, the court's jurisdiction over Howard terminated when his custody was placed with the Department. Judge Maley responded and cited § 1102 as authority for his continuing jurisdiction over Howard and the juvenile action. Howard Carder, Sr. and Howard Carder, Jr., intervened and challenged the jurisdiction of the Court of Criminal Appeals to hear the matter, arguing that the Supreme Court was the exclusive proper forum for its resolution.

The Court of Criminal Appeals on September 27, 1977, issued its published order purporting to assume original jurisdiction and granting mandamus against Judge Ma-

---

1. *State v. Davenport, 125 Okl. 1, 256 P. 340 (1927); Dancy v. Owens, 126 Okl. 37, 258 P. 879 (1927).*

2. All following statutory citations will be to Title 10 unless otherwise noted.

ley in *State, ex rel., Dept. of Inst., etc. v. Maley, Okl.Cr., 569 P.2d 1020 (1977)*. It was that Court's holding that in issuing the dismissal order, the Judge did exceed his authority, as defined by §§ 1116, 1118, and construed in that Court's prior decision of *State v. Jennings, Okl.Cr., 561 P.2d 99 (1977)*.

Before deciding this action on its merits, we must first address and determine the issues pertaining to *this* Court's jurisdiction to decide this unusual matter.

## I.

There can be no doubt as to the supremacy of the Supreme Court. The Constitution, article 7, section 4, so provides:

"The appellate jurisdiction of the Supreme Court shall be coextensive with the State and shall extend to all cases at law and in equity; except that the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute and in the event there is any conflict as to jurisdiction, the Supreme Court shall determine which court has jurisdiction and such determination shall be final. The original jurisdiction of the Supreme Court shall extend to a general superintendent control over all inferior courts and all Agencies, Commissions and Boards created by law. The Supreme Court, Court of Criminal Appeals, in criminal matters and all other appellate courts shall have power to issue, hear and determine writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition and such other remedial writs as may be provided by law and may exercise such other and further jurisdiction as may be conferred by statute.
* * * "

■ The Court of Criminal Appeals is a court of special—and limited—jurisdiction. It has exclusive appellate jurisdiction only in criminal matters.

■ The Court of Criminal Appeals has no general superintending control over inferior courts; it can issue writs of prohibition and mandamus *only* in the exercise or aid of its appellate jurisdiction. Appellate jurisdiction is that power and jurisdiction to review and correct those proceedings of inferior courts brought for determination in the manner provided by law. *State v. Cole, 4 Okl.Cr. 25, 109 P. 736 (1910); Dancy v. Owens, supra*. Therefore, in action where the Court of Criminal Appeals has no appellate jurisdiction, it has no power to issue writs of prohibition and/or mandamus. 20 O.S.1971, §§ 40, 41.. See, e. g., *Ex Parte McCollum, 90 Okl.Cr. 153, 212 P.2d 161 (1949); State v. Lackey, 97 Okl.Cr. 41, 257 P.2d 849 (1953); Wyatt v. Wolf, Okl.Cr. 324 P.2d 548 (1958); Jerry v. Pardon and Parole Bd., Okl.Cr., 546 P.2d 650 (1976); Scheidt v. Rakestraw, Okl.Cr., 548 P.2d 677 (1976)*.

The obvious question then, is: could an appeal from the dismissal order have been had in the Court of Criminal Appeals?

The only appellate jurisdiction conferred upon the Court of Criminal Appeals in juvenile cases pertains to criminal-related issues and is set forth in § 1123A, as follows:

"Any interested party aggrieved by any order or decree may appeal to the Supreme Court in the same manner as other appeals are taken to the Supreme Court of this state; provided, however, that *appeals* taken from a trial court's decision *in a proceeding for an adjudication of juvenile delinquency or in a proceeding certifying a juvenile to stand trial as an adult or denying such certification shall be taken to the Court of Criminal Appeals* in the same manner as other appeals are taken to the Court of Criminal Appeals of this state, and provided further that an order either certifying a juvenile to stand trial as an adult or denying such certification shall be a final order, appealable when entered." (emphasis added)

Judge Maley's order, as Petitioners have correctly argued, did not arise from either an adjudication of delinquency or certification to stand trial as an adult. Certification was not sought and Howard Carder did not appeal his adjudication. The only issue of this action concerns the inherent and statutory power of the juvenile court to

retain its jurisdiction over children it has adjudicated delinquent and wards of the court.

■ It is clear that this post-dispositional order of dismissal could not have been appealed by either party to the Court of Criminal Appeals. Having no appellate jurisdiction over the juvenile division of the District Court in such matters, the relationship of superior and inferior did not exist between that Court and the District Court in O–77–656 and the Court of Criminal Appeals had no authority to exercise in its issuance of the writ of prohibition.

■ The Supreme Court is the exclusive proper forum for determination of these issues. Okla.Const., Art. 7, sec. 4; § 1123; 12 O.S.1971, Ch. 15, App. 2, Rule 1.10(a)(5).

Having determined that the Court of Criminal Appeals did exceed its jurisdictional limitations in issuing the writ of mandamus in O–77–656, we must decide how to resolve this exceptional situation.

In addition to the serious questions raised by the parties concerning their personal rights, this action also presents important issues concerning the unique relationship between this Court and the Court of Criminal Appeals which are extraordinary in our state's history. We have, therefore, given careful consideration to the manner in which this action can be resolved that will be not only most appropriate for these parties but will also prove least disruptive to our appellate process.

■ There is no appeal or proceeding in error from the Court of Criminal Appeals to this Court. Through the years the Supreme Court has both granted certiorari and issued a writ of prohibition to the Court of Criminal Appeals. *Dancy v. Owens, supra; State v. Davenport, supra.* This Court is authorized by art. 7, sec. 4, of the Oklahoma Constitution, to issue writs of certiorari and we have held that where no appeal or proceeding in error lies, the Supreme Court may issue writs of certiorari to review the record of the lower tribunal as to jurisdictional errors involving either the want of, or excessive exercise of, jurisdiction where

the error cannot otherwise be corrected. See, e. g., *In re Benedictine Fathers of Sacred Heart Mission, 45 Okl. 358, 145 P. 494 (1915); Ford v. Keen, 201 Okl. 613, 208 P.2d 176 (1949).* The purpose of the writ is to prevent injustice.

■ We have decided, in our discretion, to treat this action as a proceeding for certiorari, as opposed to prohibition as the petitioners styled it. *Fisher v. Wilson, Okl., 328 P.2d 420 (1958).* By doing so we will end this continuing litigation for these parties and conclude the question presented for juvenile courts and other individuals similarly situated.

In *Dancy v. Owens, supra,* we spoke of the appropriate nature of the writ of certiorari to review judgments of the Court of Criminal Appeals where that Court exceeds its jurisdiction, and stated:

"Being a court given a status by said constitutional provisions inferior to the Supreme Court, certiorari to review [Court of Criminal Appeals] judgments, where they exceed the authority given said court, is a remedy to keep the said court within the exercise of proper jurisdiction and thus preserve the symmetry of the judicial system, of which the Supreme Court is the head."

We grant certiorari to the Court of Criminal Appeals to review the judgment complained of.

II.

Before this Court, the Department reasserts its argument that once a juvenile judge adjudicates a child delinquent and a ward of the court and places custody with the Department, the court's jurisdiction is terminated under § 1116(a)(3) and § 1118, and any further order entered in the case, even an order dismissing the case, is in excess of the court's jurisdiction.

Section 1116(a)(3) provides:

"The court may commit the child to the custody of the Department; provided, any order adjudicating a child to be delinquent and committing the child to the

Department shall be for an indeterminate period of time."

Section 1118 provides:

"Any decree or order made under the provisions of this Act may be modified by the court at any time; provided, however, that an order terminating parental rights, and an order committing a child adjudicated to be delinquent to the Department, may not be modified."

Simply put, the Department's contention is that delinquent children, such as Howard Carder, Jr., upon commitment to its custody, are *its* children, not the court's; and are thereafter beyond the reach of the court.

This is not the intention of the statutes. If it were, we would have no alternative but to strike them down as unconstitutional.

We decline the obvious temptation to engage in a lengthy and well documented legal discussion of the doctrine of separation of powers and the requirements of due process of law. It should, we believe, be sufficient to remember that the power to disrupt a family relationship and interfere with a child's personal liberty is placed with the courts. The assumption and exercise of that power are limited by law. Persons subject to it receive substantive and procedural protections from arbitrary and capricious action; they must be proceeded against in the manner prescribed by law and given fair treatment. A judgment against them is subject to review by higher courts.

Jurisdiction over the person of Howard Carder, Jr., was lawfully acquired and properly exercised by Judge Maley in J–77–14.

Section 1102(A) provides in pertinent part:

"Upon the filing of a petition, the district court shall have jurisdiction of any child who is or is alleged to be delinquent, in need of supervision or deprived, who is found within the county; and of the parent, guardian or legal custodian of said child, regardless of where the parent, guardian or legal custodian is found. * * * *"

Section 1114 provides:

"If the court finds that the allegations of the petition are supported by the evidence, and that it is in the best interest of the child and the public that he be made a ward of the court, the court shall sustain the petition, and shall make an order of adjudication, setting forth whether the child is delinquent, or in need of supervision, or neglected or dependent, and shall adjudge the child as a ward of the court."

And, § 1115(a) provides:

"After making an order of adjudication, the court shall hold a dispositional hearing, at which all evidence helpful in determining the proper disposition best serving the interest of the child and the public. * * * *"

Placement of Howard's custody with the Department was but one of many options available to the court after adjudicating Howard a delinquent child and ordering him a ward of the court (§ 1116). There is no basis for the Department's argument that Judge Maley "lost" jurisdiction over Howard by reason of the custody order. That order did not impair or in any way affect the court's *jurisdiction* over Howard. Howard remained a *ward of the court* placed only in the *custody*[3] of the Department by court order and the court retained its jurisdiction over his person and J–77–14.

■ A juvenile court's jurisdiction over a child it has adjudged a ward of the court can be terminated in only three ways which are relevant to this action:[4]

---

3. Rights and duties of a custodian, including Department are limited as set forth in § 1117, which states: "Whenever the court transfers custody of a child as provided in the preceding section, the person, institution, agency or Department receiving custody shall have the right to, and shall be responsible for, the care and control of the child, and shall have the duty and authority to provide food, clothing, shelter, ordinary medical care, education, discipline for the child, and, in an emergency, to authorize surgery or other extraordinary care. * * * *"

4. See also, § 1112 and § 1116(b).

(1) The Court may voluntarily terminate its jurisdiction by dismissing the action (§ 1116(a)(4)) [5]; or

(2) The adjudication may be reversed on appeal (§ 1123) [6]; or

(3) The child may come of age, at which time the juvenile court's jurisdiction automatically ceases (§ 1102(A)) [7].

Once a child has been made a ward of the court, even the natural parent's consent to the child's adoption by third parties and the filing of adoption petition will not terminate the court's jurisdiction over the child. *West v. State, Dept. of Public Welfare, Okl., 536 P.2d 901 (1973).*

The placement of Howard's custody with the Department did not divest Judge Maley of his authority to voluntarily terminate his jurisdiction as provided by § 1116(a)(4).

Upon issuance of the order dismissing J–77–14, the Department, Howard's custodian only by reason of orders entered in that action, was without further claim of lawful custody.

It is true that the Legislature has granted the Department a considerable degree of institutional administrative autonomy in its care and treatment of the children placed in its custody by the several juvenile courts. (See: §§ 1135, 1138, 1139, 1404). This autonomy is an obvious legislative recognition of the vast resources and qualified personnel the Department has available, as well as of the Department's need for "in-house" decision making power brought about by the sheer numbers of children placed in its custody. In terms of this case, the Department would not, under the cited statutes, have been bound by a suggestion from Judge Maley that Howard should be placed in one particular Departmental Institution or that he should receive a certain type of treatment for a certain length of time. See: *Matter of D.W.S., Okl.Cr., 563 P.2d 663 (1977); State ex rel., D. of I.S. & R.S. v. LeVally, Okl., 562 P.2d 519 (1977)* (as to pre-disposition detention orders).

We do not examine the extent of this autonomy here, however, or pass any judgment upon it, because the Department's contention that the dismissal order was a "modification" of the dispositional order, so as to be proscribed by § 1118, is not well taken.

It is clear that the order dismissing J–77–14 was not a "modification". *Matter of Meekins, Okl.App., 554 P.2d 872 (1976).* Modification is merely a revision or adjustment of details. The dismissal order vacated, set aside and entirely eliminated the action, rendering it a nullity. See, *Meekins, supra.*

We do not here examine the correctness of the dismissal order as it was not appealed and is not before us. We limit our resolution to the question of Judge Maley's jurisdictional power to have entered the order, right or wrong. He had that power.

The decision of the Court of Criminal Appeals is set aside and vacated as it was rendered in excess of that Court's jurisdiction. Judge Maley's Order of Dismissal in J–77–14 is ordered reinstated.

HODGES, C. J., and WILLIAMS, IRWIN, BARNES and DOOLIN, JJ., concur.

LAVENDER, V. C. J., dissents.

---

**5.** "The court may dismiss the petition or otherwise terminate its jurisdiction at any time for good cause shown."

**6.** § 1123A is set forth above.

**7.** ". . . When jurisdiction shall have been obtained over a child in need of supervision or a deprived child, it may be retained until the child becomes eighteen (18) years of age and when jurisdiction shall have been obtained over a delinquent child, it may be retained until the child becomes nineteen (19) years of age. * * *"